Judge Ewing
delivered the Opinion of the Court.
Edward Nailor and others, representing themselves as - the only children of George Nailor by a former wife, filed their bill against said George and his present wife, and others to. whom lie had, within a short time past, sold slaves—alleging that their father was nearly eighty-seven years of age; that, he was weak and childish and„: had been so for several years; that such was and had been his. imbecility of mind,, for somg length of time?,. *340 that he was wholly incapable of managing his; affair? with ordinary prudence and discretion, and that he Vas as easily imposed on and controlled, by those who have an influence over him, as a child of ten years of age.
Injunction.
Demurrer, and bill dismissed.
The persons and arfdlunatics,!°ih ^ntStantí aicbSUb cenor°’s power."1 Th^fpim of pro-t^fontotheclian bellor, which the ny friend of the idiot or lunatic may prefer; and upon which a' writ de • 'idiota fyc. issues,' returnable in chancery, where the inquisition may be traversed.
A similar proceeding is proper here; but if a bill be filed, containing the allegations suitable for a petition, and a prayer for general relief, the court may proceed upon it—treating the Unnecessary allegations as surplusage. Vide p. 3-15
That his present w.ife, taking advantage of his extreme old age and imbecility of mind, sed.uced him off to another county, and married, him, abput eighteen months before, with the view of getting the control of bis, property, for her own use and that of her owy children by a former marriage; that she exercised an unbounded influence over him; had highly incensed and prejydieed him against them, with whom he was before upon the utmost terms of friendship and affection, and was inducing him to sell off, at enormous sacrifices, a large pror perty in slaves and land and personal property, \\'bich he had amassed by the joint exertions of himself, themselves and their deceased mother, and was squandering away the proceeds among her own children; that she had induced him to sell five slaves at reduced prices; and that he was threatening to sell the whole of his property and dispose of the proceeds in the same way, and that the complainants should never have one cent of it.
They pray a restraining order against said property, and an injunction against selling, and for specific and general relief*
The defendants demurred to the bill; which was susGained by the Circuit Court, and the. bill dismissed, and the restraining order discharged.
It is unquestionable, that, in England, the Chancellor exercised jurisdiction over the persons and estates of id*ots anc* ^una^cs* The form of proceeding there, was by petition to the Chancellor—which might be filed by the Attorney General, or by any creditor, friend or relatiop of the unfortunate individual, praying for a commission of idiocy or lunacy; whereupon the Chancellor ordered a writ ot de idiota mquirai}do, or m the nature 0f a writ de idiota inquirando, to inquire into the party’s ' • . , . '. . .' ' 1 ^ state oí mind; which inquisition was returned before *341 the Chancellor, and was subject to be traversed before him, by inspection or otherwise, and was entirely under his control. 3 Pr. Williams, 108; 1 Bl. Com. 303-4; 2 Maddock's Chy. 734 &c.
Tho’ the power which the ch’r. of England exercised over the persons and estates of lunatics was not a judicial power, huta prerogalivevight, yot the couits of eq. in this country havelong exercised the same power (in respect to the rights of individuals,) considering it as derived from the Com’th and necessary for the protection of the persons and property of the citizens; and the existence of the power in those courts, has been fully recognised & sanctioned by legislative enactments, and is no longer questionable. Seep. 343
Though the proceedings in this case are not technically formal, when tested by the English practice; yet the bill contains, substantially, all the allegations which would be proper in a petition, and is verified by affidavit, as required by the common law. And though there are many specific prayers w'hich are unwarranted by the forms of practice, and cannot be granted, there is a general prayer,, which will authorize the Chancellor to afford that redress which is consistent with the rules of law, and the powers of the Court, according to the circumstances of the case.
But it is contended that though the English Chancellor had jurisdiction of such cases, that his powers were personal, and not judicial, granted by the special warrant of the crown, as a prerogative power, which conferred no equitable jurisdiction, but only a power of administration; and therefore, without a special statute investing the power, it has not passed to our Court? of Equity in this country.
This view is certainly very plausible, and is not without some authorities which go apparently to sustain it.
But, thpugh the powers ’ exercised by the English Chancellor, were conferred upon hint by the special warrant of the King, he exercised them as a judicial officer; and much of the business done by him, was judicial in its nature, and wa.s a,s well for the benefit o( the subject, as of the crown.
And so far as the. po wers exercised by him, were for the benefit, security and safety of that unfortunate class of individuals, as subjects of England, they are equally necessary for the protection, security and safety of the same class of individuals as citizens of the colonies, and as citizens of this Commonwealth; and the laws in force there are applicable here as to the rights of individuals; and remedy should be afforded by some tribunal. And., although those'pow’ers were exercised by the Chancellor there, as a prerogative power of the King, and as his min *342 istcria] agent, acting under his special grant, the powers have been assumed and exercised by our Courts of Equity, and their assumption of the power sanctioned by legislative enactment, and it is now too late to question the jurisdiction of the Court over the subject.
The act of ’S3, concerning per-' so,\is of unsound mind," requires attorneys of' thq C'om’th- to instU tute proceedings in such cases; but the act, in that' respect, is' merely directory, an'd to savet.heunfortunate from sufferingby neglect, and leaves nnim-' paired the right which creditors, friends and relations oY such persons fed, before the statute, to po tition for an en- . 'quiry and proper proceedings in such cases.
*342 The statute, approved December 19th, 1793, entitled “an act for the restraint, support and safe-keeping of persons of unsound minds” (Stat. Law, 793,) as well as subsequent statutes on the same subject, are unequivocal recognitions of jurisdiction in our Courts of Chancery, over the subject.
By the above statute, it is enacted—“that, if any per- “ son be of unsound mind, it shall be the duty of the at- “ torney general or of the attorney for the State or the “ county as the case may be, upon being informed there- “ of, to make application to any Court of Chancery within this Commonwealth, to appoint a committee to such unsound person; and the Court of Chancery to whom if application shall be made, shall (in the manner heretofore “prescribed) make enquiry into the fact, and make such “ order respecting the support, restraint and safe-keep- “ ing of any such person who shall be so found to be of “unsound mind, as to them shall seem just and proper. “ Whenever the estate of such unsound person, shall be sufficient for the support of his family (if any he “ have) and of himself, the said person shall be supported “ out of such estate, &c.”
We understand this statute, as recognizing the jurisdiction of our Courts of Chancery over the persons and and property of persons of unsound minds, as heretofore exercised, and as pointing to the laws theretofore in force, as their rule in the manner and mode of proceeding. And, though the statute imposes a duty upon certain attorneys of the Commonwealth, to put in motion the proceedings, this is but directory to them, and a mean used by the Legislature to insure attention to the condition of that unfortunate class, when they might otherwise be neglcct.ed by their relations or friends, or have none, who would feel sufficient interest in their behalf, to take the necessary steps for the provident application of their *343 property to their comfort and support, when they had any, or to provide for them when they had none;
The jurisdiction of courts of equity over the persons and property of persons of unsound mind is not restricted to cases of idiocy ór lunacy, strictly speaking; it extends also, td the case of every person who, in consequence of old age, disease, or any' other cause is in such a state of mental imbecility as td be incapable of conducting his affairs with common prudence, aúd leaves him liable to become the victim ofhiá own folly, or the fraud of others. —But—
The jurisdictiotl should be assumed and exercised with great caution, and only where a clear case of non compos mentis appears by inquisition.
But the statute contains no repealing clause; is remedial and cumulative, and cannot be fairly construed (as contended by the counsel for the appellees,) as repealing any provision of the common law which recognizes the right of other persons, such as friends or relations or even others, filing the petition.
But it is contended that the bill or petition contains ho specific charge of idiocy or lunacy, nor ahy allegations that are equivalent, and that tho Court should not grant an inquisition or commission of lunacy in any case of imbecility which falls short of lunacy.
It is true that, the majority of anti-revolutionary adjudications have given this construction to the common law; but the whole current of authorities since, with a sounder and more rational view of the subject, as we believe, have settled it otherwise.
We cannot perceive the reason or propriety of a rule, that would provide for the safety and protection of the property of an individual, who is subject to occasional alienations of mind, such as will denominate him a lunatic, and would fail to provide for the safey and protection of the property of a person, who, from disease, old age, or grief,.is reduced to that state of mental imbecih ity which disqualifies him for the ordinary prudential management of his affairs. In the one case, as well as in the other, lie is exposed to the arts of designing persons, and liable to be rifled of his substance, without fault on his part, and reduced to poverty and wretchedness.
When the mind of an individual is worn out by years, s'ó as to be incompetent to act with any proper or provident care or management, he is as much entitled to the protection of the law, as the tender infant. He is indeed in his second state of infancy, and is as much the subject of folly or of fraud as an infant.
It would be strange indeed, if the common law, which is said to bo the perfection of reason, while it affords protection and guardianship to the helpless in all other *344 conditions, should leave wholly unprotected, a class of cases, equally exposed to danger.
It is peculiarly the province of a 'Court of Chancery to protect those who are incompetent to protect themselves, as well as to afford redress to those who have from weakness or imbecility of mind, been made the victims of fraud. And, indeed, it would seem much better, where it could be done upon any plausible authority; for the Chancellor to interpose his powers to prevent the evil, than to borrect it afterwards!
It is true, the powers claimed should be exercised with great caution and delicacy, as tending to an encroachment upon the liberty of the citizeti.
A clear case should bS made out, upon the inquisition, df non 'conipos mentis, or mental incapacity to manage his own concerns. And when such a case is made out; with the guards which the law has thrown around the unfortunate individual, of aright to have the inquisition "found by his peers; who will ever lean towards the liberty of the citizen; and, also, the right to traverse the inquisition before the Chancellor, if found against him; there can be no danger in its exercise, but protection and security td the helpless!
Chancellor Kent; after reviewing the decisions of thé English Courts, concludes his opinion thus:—
“ I am satisfied that these latter decisions are hot only 45 founded in good sense, arid the necessity of the case; 44 but are a sound exposition of the common law, which 45 gave to the King, as parens patriae, the care and custody 44 of all persons who had lost their intellects and become 44 non compos or incompetent to take care of themselveS; 44 (Beverly's Case, 4 Coke, 127-8, 1 Bl. Com. 304,) all the 44 cases agree that the statute of 17 Edw. II, committing 44 to the King the care of the persons and estates of idiots 44 and lunatics, was not iritroductory of a new right, but 44 only went to regulate a right pre-existing in the crown. 441 should feel that I had but very imperfectly discharged 44 my trust, if I was the means of crippling the jurisdiction 44 of this Court by confining it to the strict common law 44 writ of lunacy. A numerous class of persons whose 44 minds have sunk under the power of disease, or the *345 “ weight of age, would in that case be left without protec- “ tion, and liable to beeomé the Victims of folly or fraud. “This would be a blemish in the jurisprudence of the “ country. I shall therefore award a commission', in the “ nature of 'a wit of luna'cy to enquire whether James Bttr- “ ker be of unsound mind or mentally incapable of man- “ aging his affairs.” 2 John. Chy. Rep. 237.
The proceeding to obtain the.pn tection of ti ¿ourt of chabcei for a person i unsound mini should be by pi tition—to wbic there should, i general, be no i ther parties.
And with this conclusion of the learned Chancellor, do all the later expositions of the common law agree, Sergeson vs. Sealey, 2 Atk. 412; In re Holmes, 3 Condensed Eng. Chy. Repts. 623. Ridgeway vs. Darwin, 8 Ves. 66-7:
Besides, our statute above referred to, directs the enquiry in relation to persons of unsound mind, and this broad expression is used in •several subsequent statutes. Which would seem to indicate that, the Legislature did hot intend to confine the enquiry to cases of idiocy or lunacy only, according to the strict sense of the terms; but to other cas’es equally exposed to danger, and equally entitled to the protection and guardianship of the Commonwealth: such as unsoundness of mind that disqualified the individual for the protection of himself and sub"h lance.
If the allegations of tire petition be true, {and upon the demurrer they must be taken as true,) the case be'fore the Court, is precisely such an one as falls within the expositions given of the common law in cases of uñésoundness of mtnxl from old age which renders the individual incompetent to manage his own affairs—not amount5ing to lunacy, and which needs the guardian protection of the law; and such an one, as may without any strained construction be embraced within the broad expressions used by some of our statutes'.
We therefore think it was proper to grant a writ in the nature of a writ of -lunacy.
But, as this proceeding is by petition, and not by bill, and for a specified object only (the appointment of a eommittée) it would seem, in the general, proper only to bring the person charged with unsoundness of mind before the Court. And this is the course generally of the English practice. And no object could be attained by bringing others before the Court, unless it was to enable *346 them to traverse the inquisition, which it would be proper to allow without making them parties, if their interest as vendees might be effected by the inquisition, being made to extend back to a time beyond the time of their purchase (Ex parte Hall, 7 Ves. 261) unless a case was made out in the petition which would authorize the Court to grant an injunction, or restraining order, to prevent them from removing or selling the property purchased.' Such a case is not made out in this petition. No allegation is made that there was danger of their selling ok removing the property, or otherwise disposing of it, so as to defeat the object of any subsequent proceedings for its recovery.
When an inquisitionnpon a person alleged to be bf unsound mind, relates back, so that the right to property that he has sold may be drawn in question, the purchaser may traverse the inquisition.
If a restraining order is required to prevent persons having possessionofproperty belonging to a person ofunsound mind from being iemoved, they may be made def’t to the' petition.
Children or other relatives of one supposed to be insane, have no right to become parties, witbaviewofinVestigatingfraud’s alleged to have been practiced 4pbn the lunatic. Every enquiry of that sort is a proper subject for a separate proceed ingby the committee when appointed. No investigation into, the contracts of the lunatic can be had in connection with the petition or bill in the nature of a petition.
'the court may make any order, or issue any injunction, which may be necessary, forpreserving the property during the progress' 0f the- proceodings; and to provide for the support of the lunatic-allowing him the means of defending and traversing the in, quisitioiu
*346 The petitioners in this proceeding have no interest its the property, and have no right to go into the enquiry,, as to the fraud practiced upon the weakness or credulity of the old gentleman, in obtaining the pinchase.
This can only be done, by the committee, after the id-quest and appointment. Mewland on Contracts, 17. 2 Maddocks’ Chy. 728, &c.
The complainants are only permitted for the benefit oí the old man, and the protection of his property, for his own use and comfort, to- institute the proceedings by petition, and not with a view to any benefit of their own; and have no right, in his lifetime, to institute a proceeding to set aside or avoid his contracts. No investigation could therefore take place, on this bill, in relation to the validity or invalidity of his contracts.
It was, therefore, not necessary to make the vendees' parties with a view to final relief against them;
And as no allegation is made showing a well grounded apprehension of danger that the property would be sold or run off, so as to defeat the investigation into those' sales,; by the committee¿ should a commission be granted,• it wras irregular to make the vendees or wife parties.
But we are satisfied that the Chancellor, as incident to' his jurisdiction over the subject, has full power to grant all necessary injunctions or restraining orders, for the security and safety of the property not disposed of during the progress of the enquiry, allowing to the old gentleman a competence for his support and maintenance, *347 and that of 'his family; and also, allowing him the means to defend and traverse the inquisition, should he deem it proper to do so. 1 John. Chy. Rep. 603, 3 Atk. 364, 634. In re Holmes, 3 Condensed Eng. Chy. Rep. 626.
It is therefore the opinion of the Court that, the order of the Circuit Court dismissing the petition, be reversed, and the cause remanded, that further proceedings may be had, not inconsistent with this opinion.