CASE 16.—ACTIONS BY G. W. UPTON'S COMMITTEE AGAINST S. H. BUSH AND OTHERS AND AGAINST W. R. GADDIE AND OTHERS.—Oct. 28, 1909.

## Upton's Committee v. Bush, &c.
## Same v. Gaddie, &c.

Appeal from Hardin Circuit Court.

WEED S. CHELF, Circuit Judge.

Judgment for defendants, plaintiff appeals.—Reversed.

1. Insane Persons—Guardianship—Statutes—Construction.—Ky. St. Sec. 2156, authorizing proceedings to inquire into the state of persons alleged to be of unsound mind or imbecile, or incompetent to manage their estates, and to a committee, applies to persons who are incompetent by reasons of mental unsoundness or imbecility, and not to incompetency by mere physical infirmity, because of sickness, infancy, or age.

2. Insane Persons—Unsoundness of Mind—Adjudication of Insanity—Setting Aside—Jurisdiction.—Where a court has found a person to be of unsound mind, an application to vacate such decree must be made to the same court, and is not within the jurisdiction of a court of another county.

3. Insane Persons — Inquisition — Committee—Appointment— Grounds—Verdict.—A verdict in a lunacy inquisition finding that defendant is incompetent to manage his estate, but not finding that he is a person of unsound mind, or stating in what the incompetency consists, was insufficient to warrant the appointment of a committee.

4. Insane Persons—Inquisition—Subsequent Inquest.—Where a person has been found incompetent, but one subsequent inquiry is permitted in which the issue to be tried is whether the original condition has ceased to exist, whether the first

Upton's Committee v. Bush, &c.—Same v. Gaddie, &c.

inquest was obtained by fraud, or whether the inquest was false when judgment was entered.

5. Insane Persons—Actions—"Next Friend."—The office of next friend is to represent a person under disability in the litigation, being authorized to appear only when there is no legal and statutory representative discharging that duty.

6. Insane Persons—Action—Next Friend.—Though the Attorney. General or the attorney for the commonwealth might have maintained a suit to recover property belonging to an incompetent who had no committee, such suit was also maintainable by the incompetent by his next friend, where the representative of the commonwealth did not act.

7. Insane Persons—Action by Next Friend—Qualification.—Where a next friend suing for an incompetent having no committee failed to file the affidavit of qualification, he should be allowed to supply the defect on timely objection being made, in the absence of which his failure to do so is waived.

8. Insane Persons—Actions—Next Friend.—Where an order appointing a committee of an incompetent was invalid for want of jurisdiction, and the committee, after having sued to recover property belonging to the incompetent, offered to prosecute the suit as next friend, and it appeared that defendants had imposed on the incompetent to obtain the property sought to be recovered improperly and for an inadequate consideration, the court should not have dismissed the suit by the committee, but should have permitted him to continue it as the incompetent's next friend.

JAMES MONTGOMERY for appellant.

### QUESTIONS DISCUSSED.

1st. The responsibility of appellees to the estate of Geo. W. Upton.

2nd. The right of appellant to counterclaim.

3rd. The attack of appellees is a collateral attack.

4th. Presumption that Upton was present at the inquest.

5th. And being present no notice was necessary.

6th. That appellees must plead he was not present and that a demurrer will not reach any defect, if any, in the inquest.

7th. That the appellants were made parties by the appellees and sought relief of them, and they are estopped to claim that appellants cannot counterclaim.

8th. That the court erred in not permitting Upton to sue in person or by next friend.

9th. The record showing Upton was an imbecile, that it was the duty of the chancellor, in consideration of his estate, to appoint a guardian ad litem for him or allow him to sue by next friend.

10th. That the demurrer being special came too late, reply being filed April 22, 1902, and shortly thereafter an amendment tendered.

That the case was prepared for a trial a long time, and, as limitation would not bar another action, Upton being conclusively shown an imbecile for years, and as the appellees by demurring and not pleading indicated they could not plead absence of Upton at the inquest, the court now ought to adjudge appellants $483.34. $333.84 and $25, with interest on them from time gotten, as shown by the answer and cross petition of appellees and the deposition of S. H. Bush.

BUSH & IRWIN for appellees.

QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. The inquest under which Rush was appointed committee was void, because the jury did not find any mental unsoundness. Menifee v. Ends, 97 Ky. 388; Hendricks v. Settle, 21 Rep. 1058; Taylor v. Moore, 23 Rep. 1572; Tipton v. Tipton's Com., 97 S. W. 413.

2. The inquest was also void because found by a jury of only six members. Ky. Stats. 2151-2158; Constitution of the State, Secs. 7 and 248.

. 3. The court properly refused to permit Rush to proceed with the suit in his name as next friend. Civil Code, Sec. 37; Upton v. Handley, 30 Ky. Law Rep. 170.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

G. W. Upton was found by the verdict and judgment of the Larue Circuit Court to be a person of unsound mind, and incompetent thereby to manage his affairs. A committee was appointed to take charge of his estate, an inheritance. In 1895 by proceedings had in the circuit court of Larue as well as the county court of Hardin (he having removed to the latter county) instituted by himself he was found by the verdict of the juries to be of a sound mind. It is not

pretended that there was a substantial change in his condition at any time. He was not a lunatic. His imbecility was a weakness of understanding, by reason of which he could not properly comprehend the value of property, or make contracts with respect to it. His was the mind of a child in those respects. Some things he could do. As a school boy he could learn certain lessons. He was good at penmanship, and could memorize certain rules of grammar, and do sums in arithmetic, as a boy 10 years old could do. But it seems that his mind never matured so that he could appreciate the value of property, or how its ownership affected his welfare. He knew how to spend money, for in that, of course, he had plenty of help. But the value of it to him was practically unknown or unappreciated by him. He would sell anything he had for any kind of a price, and make bargains such as no mature mind would have made. Nor was he an idiot. As to business matters he was simply weak-minded. Just as very young persons are, or very old ones sometimes get to be. It is difficult to classify his mental condition. It is enough to say of it that he had not contractual capacity. Such is the man as this record shows him to be and to have been.

The statute of this state (section 2156, Ky. St.), deals with the subject of a "person found to be of unsound mind, or imbecile, or incompetent to manage his estate," and confers upon the circuit and county courts the jurisdiction to inquire into such state of the person, and, if found incompetent, to commit his estate, and, if need be, the care of his person to a committee, or, if a lunatic or dangerous, the care of his person to an asylum.

This section has been construed not to apply to persons who are incompetent from mere physical infirmity to manage their estates, as because of sickness or old age, or mere infancy; but it covers only the instances where the person is incompetent by reason of mental unsoundness or imbecility. Menifee v. Ends, 97 Ky. 388, 30 S. W. 881, 17 Ky. Law Rep. 280; Taylor v. Moore, 112 Ky. 330, 65 S. W. 612, 23 Ky. Law Rep. 1572.

The central thought in the statute is the abnormally deficient mind, the purpose being to protect the property of such persons from becoming the prey to the avaricious who would overreach them in contracting.

Upton had some mind. He could communicate his wants in intelligible language, and was, of course, capable of thought and purpose. He wanted to get his property into his control so that he could spend it. He got two lawyers, Haynes and Irwin, to institute the proceedings mentioned to have his committee discharged. They proceeded under section 2160, Ky. St., which provides:

"Whenever it shall appear to a county or circuit court, from an affidavit filed, that a person found of unsound mind has been restored to his proper senses, or that the inquest was false or fraudulent, the court shall forthwith direct the facts to be inquired into by a jury in open court and make all necessary orders or decrees in the premises."

The court which found the person to be of unsound mind is the tribunal that should open up the judgment in the case; for the person is a ward of that court, and his estate is in its custody till the judgment is vacated. Consequently the Hardin County Court had not jurisdiction to inquire into the mat-

ter.  The proceedings in the Hardin County Court may then be disregarded.  In the Larue Circuit Court the following proceeding appears to have been entered:

"Larue Circuit Court.  May term, 1895.  Commonwealth of Kentucky v. G. W. Upton, Jr.  This day came parties by attorneys and announced ready for trial: thereupon came the following jury, to wit: (names the jury, T. J. Wilkins and eleven others) who were duly sworn and impaneled to try the issue, and after hearing the evidence and receiving the instructions of the court and hearing the arguments of counsel, they were permitted to return to their jury room to consider of their verdict, and after some time returned into open court the following verdict, to-wit; 'We, the jury, believe from the evidence that G. W. Upton has sufficient mind to manage his estate.  T. J. Wilkins.' "  Upon that verdict this judgment was entered: "This cause having been submitted, and the court having ordered an inquest herein to determine the competency of the defendant to manage his estate and the jury impaneled having returned a verdict that G. W. Upton was competent to manage his estate, it is now adjudged and agreed by the parties that Jacob Hubbard, committee for G. W. Upton, settle his accounts as said committee with the Larue Circuit Court, and he will after said settlement turn over all notes, choses in action, and money in his hands as said committee to defendant Upton, and will surrender to the defendant the possession of said defendant's estate.  It is also adjudged that the costs of this action and of the inquest to be paid by the plaintiff and taxed as costs herein, including a reasonable attorney's fee to Murray R. Hubbard, plaintiff's attorney."

Another suit involving some part of Upton's estate (which was prepared and tried with these suits) was recently before this court, where it was said (Rush, Committee v. Handley, 97 S. W. 726, 30 Ky. Law Rep. 170): 

"It is further contended that at the time Nelson purchased from Upton he had been declared by a court competent to transact business for himself. The evidence upon this point is rather meager, but in substance is as follows:

"About the time of the death of G. W. Upton's father, the question of his sanity was tried in a court of competent jurisdiction, and the jury adjudged that he was of unsound mind, and a committee was appointed for him by the court. Soon after this some parties made an effort to have a jury declare him competent and finally succeeded in having a jury so adjudge (one of the appellees, D. S. Handley, being a witness on these trials). It further appears that these parties who had interested themselves in Upton as above set forth at once took charge of his affairs, and within 30 days thereafter he had wasted all the estate left to him by his father, about $2,500." Messrs. Haynes and Irwin had a contract with Upton for 30 per cent. of his estate for their fee in these (and possibly in other) matters; Haynes' part being assigned subsequently to appellee Bush, an attorney at law residing in the same town with Upton, and who knew him well. On November 1, 1895, Upton made a deed to appellees, Bush and Irwin (the latter having been one of his attorneys in the foregoing proceedings) for all his interest in the estate of the grantor's grandfather. The consideration was $200, most of which was debt created by Upton for a stock of merchandise to wholesale houses a

short while before.   The evidence shows the property then conveyed was worth nearer $2,000.   Irwin and Bush conveyed by general warranty two parcels of the property to appellee Gaddie.

This suit was brought in equity by Albert Rush, as committee for G. W. Upton, against Gaddie to recover the real estate last mentioned.   Gaddie pleaded his purchase from Bush and Irwin, and denied that Rush was the committee of Upton.   Gaddie made his answer a cross-petition against his warrantors, Bush and Irwin.   They made their answer a cross-petition against the plaintiff.   They put in issue appellant's claim that Upton was of unsound mind, but asserted that he was of sound mind when they bought from him.   Although they had not the right to make their answer a cross-petition against the plaintiff, yet the parties joined an issue on whether Bush and Irwin had not under their deed from Upton collected considerable money due him of the personal estate derived from his ancestor.   It turned out that they had collected at least $334 on that score.   On the trial of these consolidated and cross-actions the circuit court dismissed appellant's petition.   He prosecuted appeals.   One has been disposed of as stated above. 97 S. W. 726, 30 Ky. Law Rep. 170.

In the record now before us something more appears concerning appellant's appointment as committee than was shown on the other appeal.   It now appears that in July, 1896, the Hardin County Court impaneled a jury to inquire into the state of mind of G. W. Upton.   Their verdict was:

"We, the jury, find from the evidence that Geo. W. Upton is a person who is incompetent to manage his estate; that he was born in Hardin county and resides in Hardin county, and is 23 years old; that

he was not brought into this state for the purpose of becoming a charge on the commonwealth; that he owns no estate of any kind; that his father is dead, mother is living and resides in Hardin county.''

It is said in brief that the circuit court dismissed appellant's petition because the proceedings just mentioned had in the Hardin County Court were void; that, as the verdict did not show that Upton was of unsound mind, that court had not jurisdiction to appoint a committee for him, citing Menifee v. Ends, supra; Hendricks v. Settle, 53 S. W. 1051, 107 Ky. 344, 21 Ky. Law Rep. 1058; Taylor v. Moore, supra; and Tipton v. Tipton's Committee, 30 Ky. Law Rep. 80, 97 S. W. 413.

The authorities sustain appellee's contention as to the jurisdiction. Still we think the circuit court should not have dismissed the petition. It is true that Upton was not otherwise a party to this cause, so far as the record before us discloses, than by his committee, Rush. But the record is in a very imperfect condition. Much of it was left out of the transcript, and has been brought up later. Some of it is not here yet. Briefs on both sides allude to the fact that Rush offered to prosecute the suit as next friend, but was denied. It is said that he did not tender the affidavit required by section 37 of the Civil Code of Practice.

From earliest times imbeciles have been regarded as wards of the chancellor. In Nailor's Children v. Nailor, 4 Dana 339, some of the children of George Nailor filed a bill against him and his wife, charging that he was of unsound mind because of extreme age, and was under the influence of his wife, who had seduced him late in life to marry her in order that she might get control of his property for herself and her

own children, and that she was squandering his estate.  They prayed a restraining order against her selling the property and for other general relief. A demurrer was sustained to the bill.  This court reversing the judgment said, inter alia:

"It is unquestionable that in England the chancellor exercised jurisdiction over the persons and estates of idiots and lunatics.  The form of proceeding there was by petition to the chancellor, which might be filed by the Attorney General or by any creditor, friend or relative of the individual, praying for a commission of idiocy or lunacy. * * * Though the proceedings in this case are not technically formal when tested by the English practice, yet the bill contains substantially all the allegations which would be proper in a petition, and is verified by affidavit, as required by the common law.  And though there are many specific prayers which are unwarranted by the forms of practice, and can not be granted, there is a general prayer, which will authorize the chancellor to afford that redress which is consistent with the rules of law, and the powers of the court, according to the circumstances of the case."

There was then a statute in this state respecting the holding of inquests substantially like the existing statute.  The arm of the chancellor has not been shortened since then.  Rush's suit brought before the court a state of facts with defendants in possession of an imbecile's property upon a disclosure that should have aroused the chancellor's concern and vigilance, and enlisted his ancient equitable jurisdiction.  He should not have turned the parties and property loose upon the showing before him.

Going back a step, we will remark that the late proceedings in the Larue Circuit Court (of May,

1896), seem to us to have been unauthorized. The statute permits, after one has been found of incompetent mind, but one subsequent inquiry: Has the original condition ceased to exist; or was the first inquest obtained by fraud; or was the inquest false when judgment was entered? In this case it is not pretended now, nor then so far as this record shows, that the first inquest was obtained by fraud. The unsoundness of mind found by the first jury was one that does not abate short of death. It was of the kind like a deformity. It was not lunacy. It was more like idiocy. But whether or not it was curable, or susceptible of improvement, it is not shown in the proceedings, and is not asserted that those proceedings were based upon the fact that there had been such improvement. If the practice indulged is permissible, then one jury may, without finding any change in the mind of the person after the first inquest, conclude that the first jury decided the matter wrong, and proceed to find it the other way, either on the same or different evidence. The statute does not contemplate such unseemly course. On the contrary, it inferentially forbids it. It recognizes that a verdict and judgment regularly entered fixes the status of the party, except where the proceeding was tainted by fraud or was false. In the latter event the correct practice is by direct attack, and the question would be, was the first inquest false? In addition, it recognizes and provides for the contingency of a change in a person's mind when the change is to restore it to soundness. All the inquests after the first were irregular and unauthorized. As the first committee has been discharged, the trial court should have allowed the suit of Upton to be prosecuted by a friend; and, if the affidavit of quali-

fication was not filed, if the objection was made in due season, it could have been supplied, or a prochein ami suffered who could have qualified. But there was not a motion before answer in this case to have Rush file the affidavit. Thereafter it is deemed waived. Staton v. Bryant, 5 Ky. Law Rep. 426; Henning v. Barringer, 10 S. W. 136, 10 Ky. Law Rep. 674.

Although Rush did not denominate himself next friend, yet his attitude in the case was the equivalent of that office, and he should have been so treated. As said in Nailor v. Nailor, supra, that, though .the statute imposes a duty upon certain attorneys of the commonwealth to put in motion the proceedings, this is but directory to them, and a means used by the Legislature to insure attention to the condition of that unfortunate class when they might otherwise be neglected by their relations, or friends, or have none. "But," it was said, "the statute containing no repealing clause, it is remedial and cumulative, and can not be fairly construed (as contended by counsel for appellees) as repealing any provision of the common law which recognizes the right of the other persons, such as friends or relations or even others, filing the petition."

The office of next friend in court is to represent the person under. disability in that litigation. He can come in only when there is not a legal and statutory representative discharging the duty. The Attorney General or the attorney for the commonwealth might have maintained this suit as well. There being no committee and the commonwealth's representative not acting, Rush may be deemed next friend for that purpose. We are of the same opinion upon

this record as was reached in Handley's Case, supra, namely:

"The testimony introduced is overwhelming that he (Upton) was incompetent to transact business, and that appellees knew that fact."

The circuit court should have adjudged Upton a recovery of the 73 acres of land described in the amended petition, subject to a lien in behalf of Gaddie for a sum the equivalent of the vendable value added to the land by permanent and lasting improvements put on it by him, less reasonable rents; also, the recovery of the storehouse and lot in Upton village named in the petition, and rents, less taxes and repairs, if any.

As to appellees, Irwin and Bush, the judgment should have been for $334 and interest from the time it was collected. Upon the return of the case, and before judgment is entered, let Rush qualify as next friend by executing the bond required by the Code; or, if the Larue Circuit Court has appointed another committee in lieu of Jacob Hubbard, let him be joined as a party plaintiff, if he will, otherwise as a defendant.

Reversed and remanded for proceedings consistent herewith.