# CADDEN v. COMMONWEALTH.

Court of Appeals of Kentucky.
June 15, 1951.

**As Modified on Denial of Rehearing**
Oct. 5, 1951.

410

Vincent J. Hargadon, Arnold J. Lemaire, Louisville, for appellant.

A. E. Funk, Atty. Gen., Guy L. Dickinson, Asst. Atty. Gen., Henry T. Merritt and James Walter Clements, Louisville, for appellee.

STANLEY, Commissioner.

On July 5, 1949, the appellant, Mrs. Rose Cadden, was adjudged to be a person of unsound mind by the Jefferson Circuit Court, Criminal Division. KRS 202.-020 et seq. Upon her petition and an inquest, on February 21, 1950, she was adjudged to be cured or restored. KRS 202.290. It appears a second petition for an inquisition was filed March 28, 1950, but dismissed June 3, 1950. While that was pending, on May 23, 1950, Mrs. Cadden filed a petition and motion to vacate both the judgment declaring her to be insane and the judgment of restoration, the latter because the judgment of insanity was, as she alleged, a "clerical misprision and void." We are at a loss to understand why the petitioner desires to vacate the judgment of restoration. It will be regarded as being for some technical purpose incidental to the attack upon the adjudication of insanity. The Commonwealth resisted, justifying the proceedings and the judgments. The court dismissed the petition. The appeal follows.

The case is unusual both in its pleading and purpose. A lunacy inquest is a special proceeding to determine the mental status of a person. It partakes of the nature of a civil action in personam as it is primarily for the good of the person whose mental state is in question. 28 Am.Jur., Insane and Incompetent Persons, Sec. 11. Yet, since the public is concerned and the trial involves the element of personal liberty, it has been regarded as a quasi criminal proceeding. Sabin v. Commonwealth, 233 Ky. 636, 26 S.W.2d 506. The only point in this connection is whether a challenge of a judgment should follow the civil practice or follow the criminal practice, which, when a judgment is claimed to be void, is by applying for a writ of error coram nobis or habeas corpus. The present case has followed the civil procedure, which would appear to be proper.

Though a special proceeding—neither wholly civil nor wholly criminal—we think a party has the right to attack any judgment as being void by a petition filed in the court which rendered it. Such was recognized in McFarland v. Commonwealth, 249 Ky. 128, 60 S.W.2d 360.

 The appellant's pleading is styled, "Petition and Motion to Vacate Judgment of Insanity and Restoration." It cannot be classified under the Code provisions. It charges the judgment that the petitioner was insane to have been "a clerical misprision and void." The substance of the grounds alleged are that Mrs. Cadden was not before the court, and no judgment was entered in the Order Book. Section 517, Civil Code, declares it to be a clerical misprision to render a judgment against a person of unsound mind before a defense or report shall have been made by his committee or guardian ad litem. This provision does not apply to an inquest into the sanity of that person for that is wholly regulated by statute complete in its own provisions and requirements. Nor is the proceeding under Sec. 518, Civil Code, which prescribes the grounds upon which a party may obtain a modification or vacation of a judgment by the trial court after term time, one of which is "misprisions of the clerk." Such consist of errors or mistakes of the clerk and not errors of the court and do not include a judgment rendered in accordance with the prayer of the petition to recover of a party against whom no cause of action is stated, Samuels v. Weikel, 195 Ky. 552, 242 S.W. 836, or, we may add, where the court has not acquired jurisdiction. None of the allegations of this petition can be regarded as a clerical misprision except the alleged omission to enter the judgment on the judgment book of the court. We address ourselves to that point.

 Sec. 390, Civil Code, which is also applicable in criminal cases, requires that a judgment must be entered on the Order Book. It is shown that the court has a separate judgment book called "Lunacy Book" and has had such since 1882. These books contain printed forms which, when filled, recite, among other things, the petition, order appointing physicians, the case history of the subject, the finding of the jury and verdict and the judgment of the court. KRS 202.140, 202.200. We are aware of no law that requires the entry of judgments in special proceedings like this to be entered in the book containing judgments in regular civil or criminal actions. This is the common practice. The book is, in fact, a judgment book. The point is without merit.

Several other grounds of attack upon the validity of the judgment, which have no semblance of clerical misprision, may be embraced in the general proposition that the court did not acquire jurisdiction of the person because of defects and irregularities in the petition, the form and service of notice by way of summons; also, because the subject of the inquest was tried in absentia without her right to be present having been dispensed with according to the provisions of the statute; that the attorney appointed by the court to represent her did not do so and no defense in her behalf was made. An additional claim is that the petitioner, now appellant, was the victim of a conspiracy, entered into by her husband and numerous doctors, including some of the staff of the State Hospital. It appears in the record that Mrs. Cadden has pending an action against the doctors for malicious prosecution.

The record is confusing. Made up in the trial court of records, in whole or in part, of other cases, it has been sent here in three pieces by supplements. Much of it seems irrelevant and other parts must be disregarded.

 The parties agreed that certain original depositions (apparently used in the restoration proceedings) should be sent to this court without copying and returned to the circuit court as part of its records. This court has not agreed. Sec. 743, subd. 2, Civil Code; Smith v. State Highway Commission, 245 Ky. 739, 54 S.W.2d 48. It is the duty of the circuit clerk to retrieve these records and restore them to his archives.

A casual examination shows these depositions relate to the conditions of the appellant's mind. Some testimony heard by a chancellor in a divorce action does not seem relevant. The case was tried principally on records and affidavits.

Under the well-known rule, issues of fact as determined by the court will be presumed to be supported by the omitted record. But, generally, this presumption does not attach where the omitted portions of a record were not considered by the trial court or did not influence the decision, and are not necessary to be regarded by us on review. Prewitt v. Wilborn, 184 Ky. 638, 212 S.W. 442.

The court found there was no conspiracy as alleged, observing that the suggestion by the petitioner indicated "a mental condition bordering upon the paranoid type of insanity." On the question of representation by counsel, the court commented upon what he deemed necessarily rather loose practice in insanity inquests because of the large number of them, but accepted the clerk's affidavit that the attorney appointed for Mrs. Cadden did represent her, the attorney having no recollection of the case. He also accepted as proof the affidavits of the two doctors that they had testified at the inquest that it would be injurious and detrimental to the patient to have her present in court. We accept these findings of fact.

We consider the matter of jurisdiction of the person.

The petition for the inquest was signed by Dr. Hollis Johnson, Jr., who, it will be presumed, is a reputable citizen of the county. It was regular except that it did not state the name of the subject's parents, though it is indicated both were living, nor did it state the name of her husband or his residence. KRS 202.030. It states that Mrs. Cadden was in the custody of the "General Hospital." KRS 202.040. The statute, KRS 202.060, prescribes: "All persons named in the petition, including the defendant, if of legal age, shall be notified of the proceeding by a summons issued requiring the person having custody or residing with the defendant, to appear with the defendant at a time and place stated in the summons, not less than three days after service. The parents of the defendant, if living, if their residence be known to the petitioner, or the legal guardian, if one there be, and his residence is known to the petitioner, or if there be neither parent nor guardian whose residence is known to the petitioner, then some near relative, if his residence is known to the petitioner, shall also be notified of the proceedings. If a person summoned as provided in this section fails without reasonable cause to appear and abide by the order of the court, he may be proceeded against for contempt of court."

A "Notice" signed by the Commonwealth's Attorney was addressed only to "Rose Cadden, General Hospital." It reads as follows: "You are hereby notified to appear in the Jefferson Circuit Court, Criminal Division, on the 5 day of July, 1949, at ten o'clock A.M., sharp, to show cause, if any you have, why you should not be adjudged a person of unsound mind and a lunatic and incapable of managing your estate; at said time and place a petition heretofore filed in said court alleging that you are a person of unsound mind and a lunatic, and that you are incompetent to manage your estate is set for trial and a jury will be impaneled and sworn at said time and place to pass upon said questions."

The return is as follows:

"Executed by delivering a copy of the within notice upon Rosey Cadden this 2 day of July 1949.

"I certify that I am a white male person over 16 years of age, not interested in this action nor related to any of the parties thereto, and that the return hereon is true."

This return was signed and sworn to by "M. Casper." It is presumed that this is the Dr. Casper who was appointed as one of the two physicians to examine Mrs. Cadden. But the answer of the Commonwealth to the petition to vacate the judgment specifically admits, "No summons as such was issued or served upon the defendant, Rose Cadden." It is conceded that she was not present in person at the in-

quest. The trial court, on authority of Oster v. Meyer, 113 Ky. 181, 67 S.W. 851 (construing a former statute), regarded the form of the summons or notice as sufficient and that due process was observed by having the notice served by Dr. Casper rather than by the sheriff; indeed, that the practice is more humane and better for the interests of the subject of the proposed inquest. The form of this notice seems to be the same as that in the Oster Case. At that time (1902) as stated in the opinion, the statutes did not provide for notice to or summons of the person alleged to be of unsound mind as now and for many years past. As to the sufficiency of the process or service, we need express no opinion.

▇ The court took no cognizance of the fact that none of the parties other than Mrs. Cadden was given notice as required by the statute. The procedure prescribed by the statute as to service of notice or summons was wholly ignored except as upon the subject of the inquest herself. This was no notice at all. It is held in McFarland v. Commonwealth, 249 Ky. 128, 60 S.W.2d 360, 361: "Statutory requirements in lunacy inquests must be strictly complied with or the judgment declaring the defendant to be a person of unsound mind will be void. [Citations.] Our statute provides that notice must be given not only to the alleged insane person but also to the parent or parents, guardian, or other person having the control, custody, or supervision of such person."

Therefore, the judgment was void.

The circuit court was of opinion that the action taken by the petitioner after the judgment of insanity in seeking to have herself adjudged restored to sanity and by attacking the validity of the judgment constituted a voluntary appearance in the proceeding and an estoppel to deny she was before the court.

The courts are not in accord upon the proposition of retroactive appearances in a case after judgment. The question is quite new with us. It seems to be the view of the majority of other courts that a general appearance is entered and operates to confer initial jurisdiction by a motion to vacate a judgment based upon other than jurisdictional grounds, either wholly or in connection with an objection to the jurisdiction, and that such appearance validates the judgment. 6 C.J.S., Appearances, §§ 12(g)2, 20; 3 Am.Jur., Appearances, Secs. 19, 22. A further statement of the law in 3 Am.Jur., Appearances, Sec. 37, is as follows: "According to the general rule, if a judgment has been entered without jurisdiction of the person of the defendant, the defect is cured if the defendant thereafter appears and participates in subsequent proceedings or invokes the action of the court for his benefit. In other words, a general appearance after final judgment waives defects and irregularities in the service of summons and return, just as fully as an appearance entered before final judgment. In a few cases, however, it has been held that such an appearance does not confer jurisdiction or give validity to the judgment."

▇ We consider the law as it relates to a motion or petition to vacate a judgment as void because of the absence of jurisdiction of the person, such as the present petition. It is an inconsistent and repugnant idea that by making a direct attack upon a judgment as void because the court had no jurisdiction of the person one thereby enters his appearance in that action and thus nullifies the very ground of attack.

There is a statement in Sears v. Collie, 148 Ky. 444, 146 S.W. 1117, 1120, which is apparently not in accord with these views. The statement is that when a guardian and infants brought suit under Sec. 518, Civil Code, to vacate a default judgment against them on the ground they were not before the court, and that suit was consolidated with another in a series of cases, "the infant defendants necessarily entered their appearances to the proceeding, and were bound by the judgment thereafter rendered." This is not clear but is susceptible to the construction that the bringing of the suit to vacate the default judgment had the effect of a retroactive appearance in that case. The statement as so construed is hereby overruled.

This proceeding, even though one of the allegations was in effect that there was no judgment in the original case, as described, was a straight-out attack upon the judgment as void. The petitioner was simply demanding her legal right to be relieved from a judgment obtained, as she contended and really proved, without the Commonwealth having pursued the course prescribed by law. So far as this aspect of the case is concerned, we hold there was no waiver or estoppel.

The effect of having instituted the proceeding to be adjudged cured of an insane condition and declared to be a person of sound mind raises a closer question.

The petition for restoration signed by Mrs. Cadden and verified by her and her attorney referred to the judgment of July 5, 1949, and stated that she was therein declared to be a person of unsound mind and a lunatic, and, among other recitations, that she believed "she has fully recovered from any mental disorder and prays the court that a jury be impaneled to pass upon her present mental condition and for all proper orders."

We have held that an estoppel to deny jurisdiction arises where a party to an action takes some step that is incompatible with the absence of jurisdiction or that is detrimental to the adversary party or beneficial to himself other than to be relieved from the judgment by contesting jurisdiction. Brumleve v. Cronan, 176 Ky. 818, 197 S.W. 498; Johnson v. Holt's Adm'r, 235 Ky. 518, 31 S.W.2d 895.

We do not agree with appellant's argument that the original lunacy inquest and the inquiry as to restoration are separate and distinct actions. The latter inquiry must be in the same court, KRS 202.280, 202.290, and if the person shall be adjudged to be of sound mind and restored, the clerk must make a record thereof in the original proceeding. KRS 202.300. In Upton's Committee v. Bush, 135 Ky. 102, 121 S.W. 1005, 1006, the court said: "The court which found the person to be of unsound mind is the tribunal that should open up the judgment in the case; for the person is a ward of that court, and his estate is in its custody till the judgment is vacated. Consequently the Hardin county court had not jurisdiction to inquire into the matter." And the same principle was recognized in Com. v. Redd, 196 Ky. 798, 245 S.W. 507.

A proceeding for judicial restoration is initiated simply by filing an affidavit of the person so adjudged "or by his next friend." Whatever anomaly there is in permitting a person adjudged to be insane so to plead is avoided in the present case by treating the statements of her attorney in his verification as being the affidavit of a next friend. This proceeding may be regarded as but a motion to reopen the original proceeding for further steps. By it, the petitioner, now appellant, brought herself within our rule stated above that a party is estopped to deny jurisdiction of the person in a case by taking a step in it that is beneficial to himself, or that is inconsistent with the later claim of absence of jurisdiction. The situation is stronger than that in the leading case of Balfe v. Rumsey & Sikemeier Co., 55 Colo. 97, 133 P. 417, Ann.Cas.1914C, 692. There the defendants had filed a motion to recall and quash an execution on the ground that its issuance was barred by limitations. When that was overruled, the defendants filed a motion to vacate the judgment on the ground they had not been before the court. The first motion, having asked for relief which pre-supposed that jurisdiction had attached and which was inconsistent with any objection to test jurisdiction thereafter, was held to be a general appearance retroactively.

There is specific authority for the concept, above impliedly recognized in Upton's Committee v. Bush, supra, 135 Ky. 102, 121 S.W. 1005, that a proceeding for judicial restoration to competency is but a continuation of the original proceeding and that when further action is taken in which it is represented that a judgment of insanity exists and the court is asked to take hold of the case again and further pass upon the party's rights, the question of original jurisdiction is waived and the restoration proceeding precludes the party from going back and attacking the original judgment. In re Bishop's Conservatorship (Bishop v. Welch), 149 Ill.

App. 491; Moats v. Moore, 199 Ill.App. 270; Cornett v. Cornett, 122 Mich. 685, 81 N.W. 920; Jorgenson v. Winter, 69 Wash. 573, 125 P. 957; Pope v. Bolin, 224 Ala. 322, 140 So. 382; State ex rel. Bartlett v. Littrell, 325 Mo. 35, 26 S.W.2d 768; Bradford v. Ragsdale, 174 Tenn. 450, 126 S.W.2d 327, 121 A.L.R. 1506; 44 C.J.S., Insane Persons, § 55.

We think the motion by this petitioner to reopen the inquest, thereby invoking the action of the court for her benefit (the result being a judgment that she was then of sound mind) was the recognition by her as a person compos mentis that she had been legally adjudged insane. She did not then question the validity of that judgment as she might more consistently have done. She thereby waived the jurisdictional question, and estopped herself from saying she was never a party in court.

The judgment is affirmed.