CASE 94.—SUIT BY MARY P. BOWMAN AND OTHERS
    AGAINST MARY J. CALLAHAN AND OTHERS TO
    SET ASIDE A DEED.—April 20, 1910.

## Bowman, &c. v. Callahan, &c.

Appeal from. Jefferson Circuit Court (Chancery Branch, First Division).

SHACKELFORD MILLER, Judge.

From a judgment of dismissal plaintiffs appeal.— Affirmed.

1. Appeal and Error—Right to Appeal—Next Friend.—A stranger, being authorized to sue as next friend to set aside a deed on the ground that the grantor was incapacitated by age, etc., and had been induced by undue influence to make it, could appeal from a judgment of dismissal.

2. Deeds — Vacation —Capacity of Grantor—Evidence.—Where in a suit by the grantor of a deed through her next friend to set aside a deed to the grantees who were her daughters for want of capacity, her son testified on behalf of the next friend that his mother had been incapable of transacting business for 25 years, letters written by him to his mother concerning business matters within two years prior to the time he testified were admissible both to weaken the effect of the son's testimony and to show the relations between the children and the mother concerning the affairs of the family.

PAUL B. COLLINS and HELM BRUCE for appellants.

CHATTERSON & BLITZ and KOHN, BAIRD, SLOSS and KOHN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by appellant Mary P. Bowman, as next friend of Mary J. Callahan, against Mariam and Sallie Callahan and Lorena Callahan Lott, who, together with Mary J. Callahan, are appellees herein, for the purpose of vacating and setting aside a deed made by Mrs. Callahan on April 22, 1908, to her daughters Mariam and Sallie Callahan and Lorena Callahan Lott, upon the ground as averred in the petition that "Mary J. Callahan at the time of making said conveyance was 83 years of age, and had suffered much bad health, and was then and for many years had been under the complete domination and control of her three daughters, the defendants herein, and, on account of her age and bad health and long continued submission to the domination of her said daughters, her mind had become and is now in such a condition as to render her incompetent to manage her estate, and her will power had then become and is now so impaired as to render her wholly incapable of resisting the wishes of her said daughters, and said daughters, the defendants herein, improperly and fraudulently took advantage of plaintiff's condition of mind and will, and fraudulently induced her to convey to them said land." At the appearance term Mary J. Callahan filed her answer and affidavit, stating in the affidavit that "she did not authorize this suit, nor did she authorize her daughter Mary P. Bowman to represent her therein as her next friend or otherwise, and that she is fully capable

of attending to her own affairs and business without
the intervention of a next friend or a trustee or com-
mittee, and that said action is against her will and
wish, and she asks this court to dismiss the same."
At the same term the defendants filed their joint an-
swer, putting in issue all of the averments of the
petition. When the affidavit of Mrs. Mary J. Calla-
han was filed, the chancellor, upon motion of Mrs.
Callahan, impaneled a jury for the purpose of in-
quiring into the condition of her mind; this practice
being authorized and approved in Howard v. How-
ard, 87 Ky. 616, 9 S. W. 411, 10 Ky. Law Rep. 478,
1 L. R. A. 610. Upon a trial of this question by a
jury they found "that the mind or will of said Mary
J. Callahan is not so impaired or infirm by age, di-
sease, or otherwise as to render her incapable of un-
derstanding, appreciating, or maintaining her prop-
erty rights to such an extent as to render her unable
to protect herself against designing persons." There-
upon the court entered an order dismissing the ac-
tion, and from this order the next friend, Mary P.
Bowman, prosecutes this appeal.

Preliminary to the disposition of the merits of the
case, we will dispose of the motion made by appellees
to dismiss the appeal upon the ground that, the jury
having found Mrs. Callahan competent to attend to
her own business without the intervention of a next
friend or other fiduciary, the next friend has no right
to prosecute an appeal from the verdict of the jury
and the judgment thereon. In some respects it is a
novel proceeding that a person who professes to be
interested in the welfare of another may on his own
motion, without that other's consent and in
the absence of any property interest, file an action to
vacate or have rescinded a contract or deed the other

party has executed. Yet there are instances when the ends of justice require the interposition of a stranger to protect in this way the rights of those who from weakness, disability, or other cause are unable or incapable of preserving their estates, and, if a proper state of case is presented, the courts authorize the procedure adopted here. Mrs. Bowman having the right to institute and prosecute the action, it would seem to follow as a necessary and just consequence that she had the right to demand that the case should be tried according to the settled practice in cases of like character and the right to prosecute an appeal from an adverse judgment. If this were not so, we would have presented the anomalous condition that a party who had the right to sue was yet denied the right to appeal in a case over which this court had jurisdiction. The finding of the jury and the judgment of the court thereon is not necessarily conclusive of the soundness of mind of the person for whose benefit the action is brought, or his competency to manage and direct his own affairs. It might happen that the judgment was brought about by a series of errors committed during the trial and that the jury was induced to return the verdict it did by reason of these errors, and that upon a fair trial a different conclusion would be reached. If an appeal were not allowed, cases might arise in which the very purpose of the suit, and the rendition of a just judgment therein would be defeated by errors committed on the trial. We do not know of any statute or rule of practice that denies the right of appeal in cases like this, and so we lay down as applicable the general principle that any person who has the right to institute and prosecute an action in the lower court has the right of appeal to this court from an adverse

judgment if the amount and matter in controversy is sufficient to authorize an appeal.

. Coming now to the grounds for reversal relied on, we find that the only error assigned is the action of the court in permitting appellees to introduce as evidence three letters written by Earl Callahan, a son of Mrs. Mary Callahan, to his mother, in November and December, 1907, and February, 1908. Earl Callahan was not a party of record to the suit, but it would seem from the fact that he testified in behalf of the next friend that he believed his interests would be affected by the result and that his rights were prejudiced by the deeds sought to be set aside. The letters, the introduction of which is complained of, were written in reference to business matters, and disagreements growing out of them, between himself and other members of his family. Earl Callahan testified in March, 1909, as a witness for the next friend, and in the course of his evidence said that he did not consider his mother capable of transacting business for the last 25 years. The letters written by him to his mother, and which discussed very fully and frankly business affairs, were competent for the purpose of weakening and contradicting his statement in reference to his mother's incapacity to transact business, and as illustrating that notwithstanding his evidence he considered her capable of understanding and attending to the business matters about which he wrote her. But, aside from this, if these letters were not strictly speaking competent, their admission was not such error as would justify us in reversing the case. The examination of the witnesses as in all cases of this character was permitted to take a wide range, and comprehended many acts and declarations not en-

tirely pertinent to the issue, and yet in a way the testimony illustrated certain phases of the case, and might be considered relevant when taken in connection with other facts and circumstances developed on the trial. And so these letters, independent of the question of their admissibility for the purpose of weakening the effect the jury might give to the testimony of Earl, may be considered relevant as serving to show the relations between the children and the mother in this suit involving family affairs, and that she was regarded by them as capable of appreciating and understanding business and family affairs during the time that her capacity to transact business was called in question. We are well satisfied that the admission of these letters was not error.

Wherefore the judgment of the lower court is affirmed.