# Ed Ross, Next Friend of Susan Howerton v. Burton, et al.

(Decided March 11, 1927.)

## Appeal from Morgan Circuit Court.

1. Deeds—Confining Evidence of Mental Incompetency at or Subsequent to Filing Action to Set Aside Deeds Held Error.—In action to set aside conveyances of alleged mental incompetent, excluding evidence of conduct and transactions occurring prior to filing of action three months before trial, although occurring within reasonable time prior to the trial, and confining the testimony to the mental condition of the alleged incompetent at or subsequent to filing of action, held error; since any testimony having reasonable bearing on mental condition is competent, especially if not so remote as to have little bearing on issue.

2. Trial—Error Might Not be Based on Refusal to Submit Instructions, Where Appellant Merely Requested Permission to Offer Instructions.—Error might not be predicated on court's failure to submit requested written instructions where appellant only asked to be allowed to prepare and offer written instructions, and did not in fact offer any written instructions.

3. Appeal and Error—One Denied Sufficient Time to Prepare Instructions Must Incorporate Intended Instructions in Record to Secure Review of Ruling on Appeal.—Error cannot be predicated on trial court's refusal to allow sufficient time to prepare and offer written instructions, unless instructions intended to be offered are afterwards submitted and made part of record.

4. Trial—In Action by Next Friend to Set Aside Conveyances of Alleged Incompetent, Failure to Define Mental Condition Necessary to Maintain Action Held Error.—In action to set aside conveyances brought by next friend of alleged mental incompetent, instruction to find whether alleged mental incompetent was of sound mind and able to transact her business held error, because not defining mental condition requisite to maintenance of action by her next friend, and leaving matter to mere estimation.

McGUIRE & McGUIRE, EVERT MATHIS and W. M. GARDNER for appellant.

FLOYD ARNETT and S. M. NICKELL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Susan Howerton was a maiden lady between 74 and 75 years of age at the time of the occurrences involved in this litigation. She inherited from her father, who died in 1901, some mountain land as well as some cash and other personal property, and it was supplemented by

additional property that she inherited from or which was, devised to her by her bachelor brother, whose death occurred some two or three years before the filing of this action. She and her brother, who was but a few years younger than she, lived together on the old Howerton homestead which they jointly owned from the time of their father's death until that of the brother. After the latter's death Susan Howerton's property amounted in value to between twenty and twenty-five thousand dollars, including the homestead, with no one dependent upon her, and after his death she sold a part or all of the old homestead to Tom Burton and wife in consideration of $3,000.00 in deferred payments and the right of herself to continue to reside in the house with them, but she was to pay them therefor at the rate of $1.00 per day. She sold other property that she owned and also gave or surrendered to a debtor a debt that he owed her which was secured by a mortgage.

The nearest relatives she had were nieces and nephews and two grandnieces and a grandnephew. One of the nieces married Ed Ross, and she died leaving the two grandnieces and the grandnephew above mentioned. After the transactions above recited, Ross, the father of the grandnieces and grandnephew, brought this equity action as next friend of Susan Howerton, in which he sought to set aside the conveyances and transactions above recited, upon the ground that Miss Howerton on account of her age and disease was incompetent to enter into them, and that she was imposed upon and unduly influenced to do so, and that she was incapable of managing and looking after her property. The other parties to the attacked contracts were made defendants and they filed answers denying the averments of the petition. The alleged incompetent, Susan Howerton, filed her affidavit and also what her counsel styled an intervening pleading, in both of which she likewise denied the averments of the petition and asked for a determination of the issue of her competency by a jury, and which motion was sustained. A jury was impaneled and a trial had of that issue, followed by a verdict finding her legally competent, whereupon the court struck the name of Ross as next friend as a party plaintiff and substituted therefor the name of Susan Howerton. When that was done she moved for a dismissal of the cause and it was sustained, and from that judgment the next friend prosecuted this appeal.

Since the transcript was filed in this court Susan Howerton died, and on motion the appeal was revived in the name of her successors in title to her property. So that the issue of the competency or incompetency of Susan Howerton, insofar as it affected the right of Ed Ross or any other person to prosecute the action as her next friend, is now a moot question, and if the judgment could have no other effect than to determine that right the appeal should be dismissed because the question involved would no longer be a vital one. But, inasmuch as the judgment was followed by the substitution of the plaintiff as stated, and the substituted plaintiff dismissing the action absolutely, it might be that the judgment would bar the right of her successors in title to litigate the legality of the attacked transactions, and for that reason we have concluded to review the trial before the jury and determine whether it was free from reversible error. Before taking up that question it might be proper to say that the practice here pursued, in cases where the alleged legally incompetent person has no regularly appointed fiduciary, was approved by this court in the cases of Shaw v. Dixon, 6 Bush 644; Howard v. Howard, 87 Ky. 616; Snowden v. Smith, 119 S. W. (Ky.) 785, and Bowman v. Callahan, 137 Ky. 773. The trial before the jury is attacked on this appeal upon two grounds, (1) refusal of the court to admit competent evidence offered by the next friend, and (2), improper instructions to the jury, both in form and in substance.

1. The criticism forming the basis of ground (1) is that the court confined the testimony on the trial of the issue of mental competency of Susan Howerton to her mental condition at the very time of the trial. The next friend offered testimony of past conduct and transactions, including those attacked in this case, and offered to prove that they were of such a nature as to demonstrate the mental incapacity of the alleged incompetent, so as to permit or authorize the legal interference of a next friend, even to the institution of litigation, for the purpose of, not only determining that issue, but also to correct the abuses brought about by the incompetency. if any. The court, however, rejected any evidence of past transactions, although occurring within a reasonable time prior to the trial, and confined the testimony to the mental condition of Miss Howerton at or subsequent to the filing of the action. We are convinced that the

court was in error in its ruling in that respect, since it is
perfectly clear to our minds that any testimony that
would have a reasonable bearing on the mental condition
of the person inquired about is competent upon such a
hearing, although the transactions and matters detailed
in such testimony had their origin and actually occurred
prior to the filing of the action, especially so if they were
not so remote as to have had but little if any bearing
upon that issue.   It is the universally applied practice,
and which has never been denied by any opinion that we
have been able to find, that upon trial of inquisition writs
the past history of the person on trial and his actions
and conduct might be developed by the testimony, not so
much for the purpose of proving the condition of mind
at any particular time in the past, but to enable the trier
of the fact to correctly determine the condition of mind
at a subsequent time at which such condition was the
specific subject matter of inquiry.   In the brief time
(three months) intervening between the time of the filing
of the action and the trial Susan Howerton might not
have developed by any words or conduct any fact to show
that she was mentally unbalanced, or that for any cause
she was incapable of dealing with her property through
*inter partes* contracts in the usual commercial trans-
actions of life.   She might not have made any such con-
tracts, or entered into any transactions with reference to
her property within the intervening time between the
filing of the action and the trial, and to all outward ap-
pearances she may have possessed a normally sound
mind, when the truth was that on account of her mental
make-up, her extreme good nature, her inexperience in
business transactions, or other causes she would be a
proper subject for the guardianship of courts through a
next friend or a legally appointed fiduciary.   We, there-
fore, conclude that the court erred in excluding the
offered testimony, and for that reason alone the judg-
ment should be reversed.

2.   The bill of exceptions shows that after the evi-
dence was all heard the next friend moved the court to
allow him to prepare and offer written instructions to the
jury, but it was overruled with exceptions, and the only
instruction that the court gave was oral, and according
to the bill of exceptions was in these words: "Gentlemen
of the jury: You will go out and find whether this woman
is of sound mind and able to transact her business or not.

This is the only thing I care about.'' The correct practice would have been to submit the instructions in writing when so requested, but whether the failure to do so in this case under the condition of the record would authorize a reversal of the judgment we need not determine, since the next friend offered no written instruction, but only asked that he be allowed to do so. From that it might be gathered that he was not given sufficient time to prepare his instructions after the evidence was all heard. If that were true, then the question as to whether it would be reversible error to not allow sufficient time for the purpose we also deem unnecessary to determine, since if it should be answered in the affirmative then we conceive it to be the duty of the one denied the right to afterwards submit and make a part of the record the instructions that he intended to offer had sufficient time been given him but which was not done in this case. We will, therefore, pass the criticisms as to the instructions being verbal and proceed with a consideration of the substance of the only one given.

Waiving the question as to whether the instruction was faulty because it submitted the condition of Miss Howerton's mind at the *moment* of giving it, without any consideration of its condition at the time of the filing of the action, it was clearly erroneous in that it gave no definition of the extent of impairment that would authorize an interference by the next friend. In other words, it did not submit to the jury that condition of mind whereby the appointment of a fiduciary would be authorized, or if none such, then the taking of action by next friend in order to protect the incompetent from the impositions of designing and unscrupulous persons. The instruction left it to the jury to say whether, according to the mere estimation of its members (not even confining it to the evidence heard), the next friend should or not interfere and take charge of the management of her property, without any guiding criterion for the determination of the issue, and which requires no argument to demonstrate that it was erroneously improper.

The judgment is therefore reversed, with directions to set aside the order dismissing the action and to permit (if they desire) the successors in title to decedent's property to be substituted as plaintiffs, and to take whatever further action in the premises they might see proper, if any.