## Lee, et al. v. Kirby, et al.

(Decided January 23, 1920.)

### Appeal from Barren Circuit Court.

1. Wills—Construction—Probate.—In a proceeding to probate a will containing the clause "I will C, give, demise and bequeath my home place, where I now live, to keep care of my so long as I live," held, that this provision, if a condition precedent, affects the devise to C only, and not the character of the instrument as a will.

2. Wills—Construction—Probate.—The construction of a provision with reference to a devisee is not involved in the proceeding to probate the instrument as a will.

3. Wills—Mental Capacity—Undue Influence.—Evidence herein upon question of mental capacity and undue influence held sufficient to present the case to the jury and verdict not flagrantly against the evidence.

4. Wills—Mental Capacity—Evidence—Experts.—Error of the court in refusing to permit non-expert witnesses to testify whether in their opinion decedent had sufficient mind to know his property, relatives, &c., held not prejudicial, where the same witnesses were permitted to testify that in their opinion decedent was of unsound mind.

5. Wills—Beneficiaries—Service.—Held not error to permit appellee, who was beneficiary, to testify that decedent promised him when he went to live with him to pay him for his services or give him the home place, appellants having already proven the same facts by two witnesses in attempting to prove undue influence.

6. Wills—Objects of Bounty—Argument of Counsel—Instructions.— The court did not err in refusing to exclude a statement of attorney for appellee in his argument to the jury, defining "natural objects of his bounty," there being no material variance between this definition and that given by the court in its instructions.

WRIGHT & McELROY, M. M. LOGAN and S. E. JONES for appellants.

BAIRD & RICHARDSON, W. L. PORTER and C. H. HATCHETT for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

H. P. Bush died without issue in 1917 and the following instrument, executed by him in January, 1915, was offered for probate as his will.

"I, H. P. Bush, of sound mind and disposing memory make this my last will and testament. I will John *Curby* give, demise and bequeath my home place, where I now live to keep care of me so long as I live.

"H. P. BUSH.

"Witness: C H. HARRISON,
            T. M. BORDERS.

"This 4th day of January, 1915."

His heirs, other than John Kirby, admittedly the John Curby of the will, unsuccessfully contested the probation of the will in the county court, and upon appeal in the circuit court, upon the grounds of mental incapacity and undue influence. By this appeal they ask a reversal of the judgment of the circuit court upon the following grounds:

(1) The verdict of the jury is not sustained by the evidence.

(2) The verdict is flagrantly against the evidence.

(3) Errors of the court in the admission and rejection of evidence; and

(4) Misconduct upon the part of the attorney for appellees in his argument to the jury.

1. To sustain the contention that the verdict is not supported by the evidence it is argued that "the paper purporting to be a will contains a provision that the devise is made to the beneficiary upon the provision that he care for testator during testator's life. This is a condition precedent to be performed by the beneficiary and before the property passes to him under the will he must show that the condition had been met by him. This he failed to do; hence the evidence does not sustain the verdict."

In support of this contention appellants cite the case of Irvine v. Irvine, 12 Ky. L. R. 827, but counsel overlook the fact that that was a proceeding to construe a particular provision of an instrument that had been previously admitted to probate as the will of Samuel A. Irvine, while this is a proceeding merely to establish a written instrument as the will of H. P. Bush, in which the meaning and effect of the particular provisions of the writing, if his will, are not involved. However, if as contended by appellants, the instrument is not an absolute but merely

a contingent will, and the condition upon which it was to become effective as a will failed, then, of course, it was not the will of decedent.

We shall waive the question of whether the burden of proof, with reference to the happening of a contingency upon which a will is made to depend, is upon the propounders or contestants, because no such question is here.

This court but recently in the case of Walker, Admr. v. Hibbard, 185 Ky. 795, after a careful consideration of the authorities, laid down the rules for testing a will to determine whether it is conditional or permanent. It is not necessary, however, to quote those rules here, according to which this instrument is clearly not a conditional will, because the provision which appellants contend is a condition precedent does not attach or refer to the will, as such, but only to the particular devise to appellee. Hence that provision, if a condition, affects only the character and extent of the devise to Kirby and not the character of the instrument. The mere fact that the testator made but the single devise to Kirby in his will does not alter the fact that he made an absolute and not a contingent will. The construction of this provision with reference to a devisee is not, of course, involved in the proceedings to probate the instrument as a will. That question will arise, if at all, as it did in the case of Irvine v. Irvine, *supra,* when this will, after it is established as such, comes up for construction of the devise to Kirby.

2. It is insisted that the verdict is flagrantly against the evidence, but this assignment is clearly without merit. It is shown in the evidence that decedent was very eccentric, rarely engaged in conversation with anyone except about business matters, and then but very briefly; that he was given to talking to himself and frequently laughed aloud when so engaged; that he rarely ever left home; had names for his hogs and talked to them like they were people, and otherwise conducted himself in an unusual and peculiar manner.

Practically every one of his neighbors and acquaintances detailed to the jury their experiences with and observations of him, not only in the last years of his life, but almost from the time he was grown. There were twenty-three witnesses for the appellants and eighteen for the appellees, most of whom expressed their opinion as to whether he was of sound mind, upon which question the witnesses were nearly equally divided, a small ma-

jority expressing the opinion that he was of unsound mind, but upon the side of the minority are two physicians who treated him during the later years of his life, and who had examined him a few years before he made the will for the purpose of determining whether he was capable of managing his own affairs. Both of these witnesses testified that he was of sound mind and capable of making a will, not only at the time they examined him but at the time the will was executed.

The question of his mental capacity was therefore unquestionably for the jury, as was also the question of undue influence.

There was no direct evidence of undue influence, and only slight circumstantial evidence from which it might have been inferred. Upon the other hand there was the positive evidence of two disinterested witnesses who attested the will that the same was the free and voluntary act of the decedent, and that the beneficiary was not present when it was prepared, as well as evidence that he did not even know of its execution for some months thereafter; so that neither upon the question of mental capacity nor undue influence is the verdict flagrantly against the evidence.

3. The court refused to permit four non-expert witnesses for appellants to testify whether in their opinion decedent had sufficient mind to know his property, his relatives, and his duty toward them, and to make a rational survey of his estate and his kindred and make disposition of his property according to a fixed purpose of his own.

These witnesses did not show much of an acquaintance with or knowledge of the decedent during the latter years of his life, and especially about the time the will was prepared, but we are of the opinion that under our very liberal rule they were qualified to answer the question (Murphy's Exor. v. Murphy, 146 Ky. 396, 142 S. W. 1018); and that the court erred in excluding this testimony. We are, however, of the opinion that this error was not prejudicial, since each of these witnesses was permitted to and did express his opinion that the decedent was of unsound mind, and was permitted in addition to relate quite fully the facts upon which he based his conclusion. It seems to us therefore that there could have been no additional weight given to their evidence in appellants' behalf had they been permitted to say that he

did not have such mental capacity as is required to make a will, since this they had done in effect when they gave their opinion that he was not of sound mind.

Appellants also complain that the court permitted the appellee, Kirby, over their objection to testify that decedent had promised him when he went to live with him that he would pay him for his services or give him the place on which he lived. As a matter of fact, however, appellants did not object to this testimony, but only objected when the witness was asked when it was that decedent had made the promise to him. Not only so, but in attempting to prove undue influence appellants themselves had already proven by two witnesses that the witness had at one time made exactly the same claim to decedent and had endeavored to get him to carry out this promise by executing a will to that effect. It is therefore clear, we think, that appellants not only have not properly saved the question, but that there could be no harm in permitting the witness, who was the beneficiary in the will, to state what they had already proven by two witnesses he had stated upon another occasion and in the presence of the decedent.

4. It is insisted that the attorney for appellees was guilty of misconduct in his argument to the jury in saying to them: "Gentlemen, what is meant by 'natural objects of his bounty?' Why, it means those who were with him when he was sick, who smoothed his pillows and handed him a glass of water, and who waited on him in sickness, and those who had been kindest to him."

When this statement was made the court had not given an instruction defining "natural objects of his bounty," and counsel for appellants at the time offered no objections thereto. After the arguments had been concluded and just before final submission the court upon motion of appellants gave an instruction defining the phrase. We are not sure the definition given by the court is more accurate than the one offered by counsel for appellee in his argument and to which the objection is made, but that fact would hardly alter the question now if there was any material variance in the statement of the counsel, since it is the province of the court to define the law for the guidance of the jury and counsel alike. We must however confess our inability to discover any such material variance or anything that is objectionable or untrue in the statement to which objection is now

made, especially upon the facts of this case. Appellants and appellees were alike near relatives of the deceased and certainly any one of them that ministered to him in sickness was a most natural object of his bounty. So whether or not appellee Kirby ministered to decedent in the manner indicated in counsel's statement, he was yet a relative by blood and a natural object of his bounty. Hence we do not think the statement was improper argument and the court did not err in refusing to exclude it, especially as no objection was offered at the time it was made.

Finding in the record no error prejudicial to appellants' substantial rights, the judgment is affirmed.