## Sabin v. Commonwealth et al.

(Decided March 28, 1930.)

W. J. WEBB and C. C. GRASSHAM for appellant.

J. M. BRUMMAL, F. B. MARTIN and WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

Mrs. Anna D. Sabin is a citizen of Hickman county, but for some time has been in an infirmary and living temporarily at a hotel in Paducah. After coming into possession in January, 1928, of a large estate, consisting of securities and farm lands, Mrs. Sabin executed a general power of attorney to L. A. Washington, an old friend and business associate of her deceased husband, in which she authorized and empowered him to transact all her business. It is agreed by all parties that Mr. Washington is a man of ability, probity, and integrity, and qualified in every respect for the trust reposed in him, but it is said he is not situated so as to give proper attention to the farm. Proceedings were instituted in the Hickman circuit court in April, 1929, by a near relative, in the name of the commonwealth on his relation, to have Mrs. Sabin declared incompetent to manage her estate by reason of imbecility or unsoundness of mind due to advancing years and physical infirmity. A jury found her to be thus incompetent, and a committee was duly appointed for her. Mrs. Sabin brings this appeal from that judgment.

The evidence introduced in behalf of the petitioner was ample to sustain the verdict of the jury; although it may be said that the evidence heard in behalf of Mrs. Sabin would likewise have justified a verdict that, while physically incapacitated and inexperienced in business affairs, she was not mentally disabled. The grounds submitted as requiring the court to reverse the judgment other than that the verdict is not sustained by the evidence will be stated as they are severally disposed of.

1. It is submitted that there is at present no statute covering inquisitorial proceedings respecting one who is charged to be incompetent by reason of unsoundness of mind resulting from physical infirmities, and therefore that any steps taken in such a proceeding must be in accordance with the common law, following ancient equity practice.

The Act of 1893 (Acts 1891-92-93, c. 147) as compiled in subsequent statutes as sections 2149 to 2171 inclusive, was divided into two articles. Article 1 was composed of sections 2149 to 2155, and related to the care and custody of the person and estate of idiots, lunatics, and incompetents, and the oath to be administered in all inquests concerning the last named. Article 2, composed of sections 2156 to 2171, related to jurisdiction and procedure. In 1918 the General Assembly (chapter 54, p. 156 et seq., Session Acts of that year), enacted a comprehensive law providing for the commitment, care, and treatment of epileptics, feeble-minded and insane persons, and explicitly repealed, among other laws, sections 2157 to 2171, inclusive, of the 1915 edition of the statutes. This constituted an express repeal of all of article 2 of the original act, except section 2156, which related to the jurisdiction of county and circuit courts to hold inquests upon all persons included within article 1. However, this section was probably repealed in its entirety by implication, a question which need not now be determined. The new law provided that exclusive jurisdiction should be in the circuit courts for the trial of all cases coming within the terms and provisions of the act. There is no specific reference to incompetents or those who, by reason of advanced age or physical infirmity, have become of unsound mind and rendered incapable of managing their estates.

Again in 1928 the Legislature revised the law respecting this subject, and provided an elaborate system for the care of the penal and eleemosynary institutions

of the state and their inmates (Acts 1928, c. 16, p. 81). Section 63 and 64 defined the terms used in the act, but there was no direct reference to the class of unfortunates with which we are now dealing. By section 68 of that act, the circuit courts were given exclusive jurisdiction of all inquests concerning the condition of the mind or mental faculty of persons. But again the trial procedure established only related to feeble-minded persons, epileptics, idiots, and insane persons, including certain drug addicts. It is contended by the appellant that mental defectives who are generally classed as incompetents are not comprehended by this act.

Section 2155, a part of the original Act of 1893, prescribing the form of oath to be administered in cases of this kind, has never been expressly repealed by either of the two subsequent revisions of the law relating to this subject. In section 79 of the Act of 1928, which provides for the form of oath to be administered to the jury on an inquest into the claimed unsoundness of mind of an idiot or lunatic, this reference is made to it: "But this oath shall not be confused with or in any wise conflict with the oath to be given upon the inquest of an imbecile as prescribed in section 2155." It is apparent, therefore, that section 2155 has never been repealed. That section is as follows:

"In all inquests held in respect to persons alleged to be imbecile or incompetent to manage their estates, the court shall cause an oath to be administered to the jury in such form as to ascertain by the verdict whether such person, by reason of bodily infirmity, disabling him from making his thoughts and desires known, or by reason of any infirmity or weight of age, is incompetent to manage his estate, and also what estate he owns in possession, reversion or remainder, and the value thereof."

We also have section 2149 remaining in the law, untouched by these recent enactments (except as to jurisdiction of the county courts), and that relates, not only to the persons and estates of idiots and lunatics, but also to those in this classification. And section 2151, which has never been repealed, provides for the appointment of a committee for a person adjudged to be incompetent by a jury upon an inquest held under the statute.

Incompetency, other than that due to confirmed bodily infirmity rendering one unable to make his desires known, is a species of insanity for it is a weakness of mind or mental abnormality. "Unsoundness of mind," the term used in the statutes, has been judicially declared to be synonymous with "insanity." 32 C. J. 621. Although this character or degree of mental disorder is not included by name in the act of 1928, it is without doubt comprehended within the generic term of insane persons therein used, for it seems clear that, having retained the provisions of section 2149 and section 2155 of the old statute, it was the intention of the Legislature that the same procedure in respect to such inquests should be followed and maintained.

2. By section 68 of the Act of 1928 (now section 216aa-68, of the Statutes), it is provided that, when no circuit court is in session in the county, inquests as to insane persons may be held by the judge of a circuit court or by the presiding judge of the county court. It is asserted by the appellant that in undertaking to confer this power on the county judge the statute makes of him a special circuit judge; that section 130 of the Constitution prescribes among the qualifications of a circuit judge that he shall be a lawyer, and that the county judge who presided at this inquest did not possess that qualification. Hence it is claimed the inquest is void.

It is true that in Turpin's Adm'r v. Stringer, 228 Ky. 32, 14 S. W. (2d) 189, the court referred to the county judge when he was presiding at an inquest in the circuit court as "a sort of special judge;" but the question in that case was as to the jurisdiction of the county court in proceedings of this nature and not the qualification of the presiding judge. While these inquests are now exclusively placed in the circuit court, they are special proceedings in that tribunal, and the county judge is designated to act just as in the absence of a circuit judge he is authorized to issue restraining orders and attachments. Civil Code of Practice, secs. 251, 273. It has never been suggested through the many years that those provisions have been in effect that he was acting as a circuit judge or that it was necessary that he should possess the qualifications of that officer. There is no constitutional inhibition of the granting of the authority to a county judge, nor does the vesting of the power in him transform him into a circuit judge. This point must accordingly be disallowed.

3. It is next submitted that, since the jury was not drawn from a regular panel or from the wheel for the purpose of trying the case but were summoned as bystanders, the appellant has been deprived of her right to have a jury impartially selected and impaneled according to law. There is no statutory provision for the summoning of jurors for these inquests when no term of the circuit court is in session. In its absence, the jury may be selected as at common law, which was by the executive officer of the court, who, under our jurisprudence, is the sheriff. 35 C. J. 257; Deaton v. Commonwealth, 157 Ky. 308, 163 S. W. 204. Mental defectives have always been recognized as the peculiar care of the courts of equity. Because of this relation and the necessity oftentimes for a speedy determination of these matters, we are quite sure it was never intended that the statutes providing for the manner of selecting jurors at regular or special terms of circuit court, regularly held, should apply, although it would appear that the qualification demanded of jurors should be recognized.

4. The complaint that irrelevant and incompetent evidence was admitted on the trial consists principally of objections to expressions of opinion by lay witnesses as to Mrs. Sabin's mental condition, some of whom gave few, if any, facts upon which the opinion was based. It is the well established rule that nonexperts in matters of this kind may relate symptomatic actions on the part of the person whose mentality is the subject of inquiry, and then express their opinions. The fact that the witness does not relate in detail the specific instances on which his opinion is based does not render his evidence inadmissible. Under the liberal rule obtaining in this state, all such evidence is considered competent, and is to be submitted to the jury for what it is worth. Murphy's Ex'r v. Murphy, 146 Ky. 396; 142 S. W. 1019; Lee v. Kirby, 186 Ky. 603, 217 S. W. 895. The reading of the reports of examining physicians as to Mrs. Sabin's condition, in addition to hearing their testimony, could have done no harm, even though immaterial. It does not appear there was any incompetent evidence admitted which could have had any material bearing or effect.

5. For the first time in this jurisdiction, so far as we are aware, the question is raised as to the sufficiency of instructions submitting to the jury the issue of incompetency to manage an estate. Attention has already been directed to the language of section 2149 of the Statutes.

relating to the jurisdiction of the court to inquire into the capacity of "those whose minds, on account of any infirmity or weight of age, have become so imbecile or unsound as to render them incompetent to manage their estates," and to the form of oath to be given the jury in like language. The instruction given the jury was in these words:

"The Court instructs the jury that if they believe from the evidence in this proceeding that the mind of the defendant, Anna D. Sabin, has on account of any infirmity or weight of age, become so unsound as to render her incompetent to manage her estate, you will by your verdict so find, and also say what estate she owns in possession, reversion or remainder, giving the value thereof; and the place of her residence."

Numerous instructions were offered by the appellant establishing various standards by which the jury should be governed, but they were refused. It is contended that no criterion was given the jury for its guidance, and that the language of the statute which was followed is too abstract. We find little or no direct authority on this question, although there are many opinions in other jurisdictions stating the character and quantum of proof necessary to show that a person is incompetent to manage his estate by reason of unsoundness of mind arising from age or physical infirmity. An exhaustive annotation covering the subject of the character or degree of mental condition or capacity of a person that will justify the appointment of a guardian or a committee of his estate may be found in 17 A. L. R. 1066. Courts have generally defined the term "mental incompetency" and "incompetent" as used in statutes to be any one who, though not insane, is, by reason of old age, disease, weakness of mind or from any other cause, unable, unassisted, to properly manage or take care of his property or of himself, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons. See Words and Phrases, First Series, vol. 5, p. 4476, and Words and Phrases, Third Series, vol. 4, p. 184.

In Howard v. Howard, 87 Ky. 616, 9 S. W. 411, 10 Ky. Law Rep. 478, 1 L. R. A. 610, this court indicated that such was the degree of unsoundness of mind authorizing an interference by the courts with the liberty to dispose of one's self and his property.

But our statute only declares that a jury on an inquest shall ascertain and by its verdict declare whether the subject of the inquiry by reason of any infirmity or age is competent to manage his estate which, as construed by the court, relates to mental competency or soundness of mind. Menifee v. Ends, 97 Ky. 388, 30 S. W. 881, 17 Ky. Law Rep. 280; Taylor v. Moore, 112 Ky. 330, 65 S. W. 612, 23 Ky. Law Rep. 1572; Upton's Committee v. Bush, 135 Ky. 102, 121 S. W. 1005.

In the opinion of Howard v. Howard, supra, may be found an intersting and illuminating history of the origin and development of this branch of jurisprudence. In relation to conditions presented by the instant case, as distinguished from one where the control of the body is. involved, it is the benevolent purpose of the statutes to conserve the property of one so unfortunate as to be deprived of his mental faculties and of his capacity by reason thereof to protect it himself. That duty devolves on a court sitting in equity. Yet it is wisely provided that before such control may be assumed by the court and its agents, the person has the right to demand that a jury first find the incapacity to exist. As such inquests or trials generally involve the element of personal liberty, they are regarded as quasi criminal proceedings. Taylor v. Barker, 47 S. W. 217, 20 Ky. Law Rep. 582.

In Menifee v. Ends, supra, the verdict simply declared the defendant to be incompetent to manage her estate. It was declared that the question to be inquired into and ascertained was as provided in sections 2149 and 2155, and therefore the verdict was defective.

In Commonwealth v. Redd, 196 Ky. 798, 245 S. W. 507, a proceeding in which restoration was sought to the position of one sui juris, the court considered an instruction which followed the language of the statute in submitting to the jury the question of mental capacity or incapacity as being in substance the same as that offered by the commonwealth on relation of the committee, who was opposing the effort of the incompetent, which it was contended should have been given. The sufficiency of that instruction, however, does not seem to have been questioned, and was not considered.

The court is of the opinion that an instruction which follows the terms of the statute as it has been construed and the language prescribing the oath to be administered in inquests held in respect to persons of this class is suffi-

644

ciently specific, and gives to the jury the proper standard or criterion for its guidance. Hence the instruction given in this case was correct.

It is not made to appear that the appellant is entitled to a reversal of the judgment, and it is therefore affirmed.

Whole court sitting.

CHIEF JUSTICE THOMAS dissents from so much of the opinion as holds that the instruction given was sufficiently specific as a test of incompetency.

DISSENTING OPINION BY CHIEF JUSTICE THOMAS.

I agree with the opinion on all questions determined therein except one, which is, that it was not reversible error for the court to decline to give to the jury an instruction, defining the extent of incapacity of Mrs. Sabin so as to authorize a verdict finding such incapacity as would authorize the appointment of a committee to manage her estate. The opinion found and held that section 2149 of our present Statutes was the one authorizing this procedure and which directs the appointment of such a committee, if, among other things, the person in charge (and which was the ground relied on in this case) "on account of any infirmity or weight of age, have (has) become so imbecile or unsound as to render them (him) incompetent to manage their (his) estates" (estate). It was the contention of the movants in this case that Mrs. Sabin, on acount of her infirmity and weight of age, had become of such unsoundness physically and mentally as to render her incompetent to manage her estate. She denied that charge, and the issue thereby made was the sole one to be determined by the jury. The court, as the opinion points out, submitted that issue in the *language* of the statute giving the remedy, without furnishing the jury any standard of incompetency that in legal contemplation would disable her to manage her estate and to keep it from being dissipated and squandered by respondent herself on her own volition, or through the machinations of selfish and designing persons taking advantage of her and depriving her of her estate without adequate consideration or compensation, and without ability on her part to prevent it because of such incapacity. The statute, it will be seen, merely states the facts *in general terms* that would authorize such a procedure, without including any standard from which or by which the facts

may be determined, and that is so clear that I am convinced that no one will contend to the contrary.

Judicial utterances are too numerous to the effect that it is incompetent and improper, in jury trials, for the court to submit to it an issue arising under a statute containing such general language in its general terms without an instruction, independently or by way of qualification, defining the condition in the nature of a guide or standard that will authorize the jury to determine the issue involved in such general language, to require a specific reference to, or a cataloging of, them in this dissenting opinion. The same is true with reference to any other issuable fact arising from general language, whether it be a part of a statute or a part of a rule of law evolved by the courts. The cases are almost without exception to the effect that an instruction authorizing the recovery of damages, without containing any standard to guide the jury in arriving at legally recoverable damages, is not only erroneous but always furnishes ground for a reversal of a verdict returning damages. But recently, in the case of Aetna Insurance Co. v. Weekley, 232 Ky. 548, 24 S. W. (2d) 292, we reversed the judgment of the trial court for the sole reason that the court submitted to the jury the question of "waiver" without defining the facts that would constitute it. In such a case the avoidance contained in that doctrine is laid down by the courts in general terms, i. e., that a litigant may be deprived of a right by waiving it without defining the term; but where the facts are disputed and it becomes necessary to submit the issue to the jury, all courts hold that it is the duty of the court to define to the jury what facts would constitute waiver so as to entitle the party relying on it to its benefit.

In will contest cases the opinions are equally unanimous and without exception that definitions of mental incapacity so as to disqualify one from making his will, and of undue influence that would authorize its setting aside, must be defined by the court to the jury trying the case, and no case can be found in this or any other court, so far as I am able to discover, that would uphold a verdict in such cases without such defining instructions, when the record was in such condition as to present the question.

The same is true in criminal trials where a plea of insanity is interposed. This court at least, and I think all others, follow the invariable practice of defining the

condition of the defendant's mind in criminal prosecutions that would entitle him to an acquittal on the ground of insanity. See Southers v. Commonwealth, 209 Ky. 70, 272 S. W. 26. No case, so far as I am aware, has ever been approved where the court submitted to the jury in general language the issue of whether or not the defendant was insane, without going further and stating what facts would constitute · the requisite excusable insanity. Multiplied instances could be given wherein the courts in cases involving analogous questions refused to approve or uphold judgments where the trial court submitted the issue to the jury in only general language giving the right, without an additional instruction or qualification submitting the facts that would constitute such right, or, in other words, defining the grounds of the right relied on, and it would be a work of supererogation for this dissenting opinion to be further lengthened by references to such cases.

It is true, so far as I have been able to find, that the question, as applicable to this character· of inquisitorial case, has not been presented to, or expressly determined by, this court; but it has been determined by many courts in surrounding and other jurisdictions. However, in the case of Howard v. Howard, 87 Ky. 616, 9 S. W. 411, 413, 10 Ky. Law Rep. 478, 1 L. R. A. 610, and other cases cited in the opinion, this court did determine that upon such investigations it was the duty of the court to direct the inquiry by the jury to·the fact "as to whether the mind of the person was so impaired by age, disease, or otherwise, as to render him incapable of understanding and appreciating his property rights to such an extent as to render him unable to protect himself against designing persons." If the person in charge should be found by the jury to be in that impaired mental state, then a committee should be appointed; otherwise, not. In other words, the language of Judge Bennett, who wrote that opinion for the court, did not stop at reciting the fact of impairment, by disease or otherwise, but went further and said that it should be to such an extent "as to render him incapable of understanding," etc. The cases finding their way to this court, originating in such a procedure, are all silent upon the question now being discussed, and so far as the opinions show it was never raised, discussed, or determined in any opinion of this court. It may be that in many, if not the most of or all of them, the practice as I am contending for was followed

by the trial court; or it may be that counsel representing the person in charge did not raise the question either in the trial court or in this court; but, whatever the reason, it is plain to my mind that the mere fact of no such question having heretofore been raised is no argument in favor of the doctrine of the majority opinion.

On the other hand, the annotation referred to in 17 A. L. R. 1065, not only points out and demonstrates that the question has been before the courts of many other jurisdictions, but also that each of them approved the practice of instructing the jury so as to furnish it a proper criterion or measurement by which it may be guided in arriving at the facts relating to the incapacity of the person in charge. In most if not all of the cases discussed in that annotation, there was a statute authorizing the procedure couched in *general* language very similar to that contained in section 2149, supra, of our statutes. The Supreme Court of the State of Iowa, in the case of Smith v. Hickenbottom, 57 Iowa, 733, 11 N. W. 664, 667, had before it the same kind of proceeding as that involved in this case and which was held under a statute authorizing the appointment of a committee or guardian for ''an idiot, lunatic, or person of unsound mind,'' and the Supreme Court of that state approved and upheld an instruction defining unsoundness of mind within the meaning of the statute, which said: ''If, therefore, you find from a preponderance of the evidence that the condition of the defendant's mind is such as discloses incapability of exercising judgment, reason, and deliberation,—of weighing the consequences of his acts and their effects to a reasonable degree upon his property, estate, family, and attendants, and his own person,—it will be your duty to return a verdict that he is unsound of mind.'' Other similar cases will be found in the annotation and where the same practice was upheld and approved.

Counsel for Mrs. Sabin in this case not only objected to the generel instruction given by the court in the language of the statute, but offered a specific instruction defining the mental capacity of their client that would authorize the appointment of a committee to take charge of her property, but which the court declined to give, and which I think was the only error committed at the trial of the case, and which I think was of sufficient materiality as to authorize a reversal of the judgment. To take one's property from his custody without his consent is

an act of far-reaching consequences and constitutes a most emphatic encroachment upon the liberties and the rights of the owner, and before it should be done the law providing for it to be done should not only be strictly followed, but in such a way and manner as to create no confusion with the fact finding body, and so as to enable it to clearly ascertain, weigh, measure, and arrive at the facts authorizing such drastic action on the part of courts having jurisdiction of the subject.

I deem it unnecessary to further elaborate the case, but for the reason stated I most respectfully dissent from the opinion on the single point herein discussed.