# Downing v. Siddens et al.
## (two cases)

(Decided Feb. 7, 1933.)

W. D. GILLIAM, F. R. GOAD and N. G. GOAD for appellants.
N. F. HARPER and EMMA D. KEEN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

These two appeals are presented as one, and will be so considered. An ex parte petition was filed in open court by J. J. Siddens and J. A. Downing, in which it is stated that Joe Siddens was a resident of Allen county, Ky., in ill health, "mind enfeebled, and had been for several years unable to transact business for himself, and not of sufficient mental ability to cope with an average person in a business transaction; not able properly to preserve his estate, and same has been and is being wasted"; that he is living with his second wife, Mrs. Julia Barton Siddens. An inquest was asked as to his mental condition, and for the appointment of a committee. A copy of the summons was delivered to him and another to his wife, on the 23d day of September, 1930. It required Joe Siddens to answer in three days, an ex parte petition in equity. On the 26th day of September, 1930, the following order was entered:

> "In this action it is agreed by both plaintiffs and defendants, by and through their respective attorneys, that a committee should be appointed for Joe Siddens, and it is therefore so ordered by the court."

The order appointed F. E. Bradley committee of Joe Siddens and he qualified by executing bond in the sum of $7,000. The order directed Bradley to select appraisers to appraise the property of Joe Siddens and to make and return an inventory thereof. On the 20th day of April, 1931, a notice was signed by Mrs. Ol Downing, Jack Siddens, and Mildred Siddens, by their respective attorneys, and executed by delivering a copy to Mrs. Julia Siddens. This notice, with the return indorsed thereon, was filed in open court, on the 22d day of April, 1931, and a motion was entered for a rule to require Mrs. Julia Siddens, wife of Joe Siddens, to

deliver to F. E. Bradley, committee, the whole of the personal estate of Joe Siddens, including canceled checks, etc.; Julia Siddens appeared in obedience to the notice and "demurred to the motion"; also filed a response wherein she set up title to a $1,000 county warrant, and a bond of $500 issued by the city of Scottsville. Her response was traversed by a reply. A great deal of evidence was taken on the issues thus formed. A careful reading and close scrutiny discloses that the greater portion of the evidence consists of opinions of the witnesses, with no statement of the facts upon which they were formed, and insinuating criticisms of Joe Siddens' wife for giving Joe Siddens and his affairs close attention and care. A judgment was entered on the evidence decreeing his wife the owner of the claim of $1,000, and his estate the bond of $500. Pending the proceedings she was required by an order of court to deliver to F. E. Bradley, committee, the notes and effects of Joe Siddens.

The action herein entitled, "Mrs. J. A. (Ol) Downing v. Julia Siddens" was commenced by F. E. Bradley filing a petition in which he styled himself F. E. Bradley, committee for Joe Siddens. In it a recovery was sought on ten notes each for $1,062.50, executed and delivered by W. H. and J. E. Hudson to Joe Siddens, and delivered by his wife in obedience of an order to Bradley. It is alleged that these notes were executed and delivered by them as evidence of the balance of the purchase money for a tract of land situated in Allen county, sold and conveyed by Joe Siddens and wife to the Hudsons. Guy Celsor by an answer asserted ownership of one of the notes by virtue of an assignment of it to him by Joe Siddens on January 1, 1924, for a valuable consideration. Judgment was entered, directing the land sold to pay these notes. It was sold, when "F. E. Bradley, Com.," purchased it at the price of $10,250. The commissioner reported, "Plaintiff became the purchaser, and did not make any bond, and he will not have to pay anything but the costs." A motion was entered in this action by the daughter and grandson of Joe Siddens, asking the court to direct F. E. Bradley, committee of Joe Siddens, to bid for the land a sum sufficient to pay the debt, interest, and costs. This included the note owned by Celsor. The court in the order of sale, in response to this motion, directed that "the plaintiff is authorized to use his own best

judgment and discretion as to bidding on the property to be sold, but in no event shall he bid in excess of the debt, interest and costs.'' Julia Siddens filed a response to the above motion of the daughter and grandson. In her response she set up that the debt owing to Joe Siddens was $9,800, and if the committee bid the amount of the debt sued for, it would include the $1,000 note of Celsor and interest. The prime basis of her objection was that it would be equivalent to a conversion of the personal estate of Joe Siddens into real estate, and thereby she would be deprived of her marital expectancy in the $9,800 evidenced by the notes. The court entered an order that the land bid for by F. E. Bradley, committee, be treated as personal property as far as Julia Siddens was concerned, and that she be entitled to her potential rights therein considered as personalty. These cases are unique in practice and present an anomoly in procedure. The ex parte petition does not state facts sufficient to authorize the trial of Joe Siddens for imbecility. The parties to it were without authority to agree for the appointment of a committee. The court had no jurisdiction to appoint a committee in the absence of a verdict of a jury finding that Joe Siddens was an incompetent, due to mental insanity or imbecility, and not mere physical infirmity. The language of the order showing the agreement to appoint a committee does not indicate who were the would-be plaintiffs and defendants. If it be regarded as having been predicated on an agreement of the wife of Joe Siddens and her attorney, a complete answer thereto is, they were without right to make, and the court was without jurisdiction to enforce, such an agreement. It needs no authority to sustain the statement that the wife and children of an adult, and their attorneys, cannot enter into such an agreement, and that no court, under the statutes, has jurisdiction, to enter an order in accordance therewith, and thus entirely oust the husband and father of the control and possession of his property.

"The term 'imbecility of mind,' while hardly capable of exact or comprehensive definition, is generally applied to a lack of normal mentality not so complete or absolute as exists in the condition we call 'idiocy,' but greater and more marked than in cases to which in ordinary parlance we apply the milder term 'feeblemindedness,'' State v. Hanner, 186 Iowa, 1259, 173 N.

W. 225. Mental imbecility consists of the absence of, or change in, the faculty of reasoning and discerning, and which renders the person incapable of taking care of himself and administering his affairs. Pons v. Pons, 137 La. 25, 68 So. 201.

If Joe Siddens was an incompetent within the meaning of the term imbecility and as was attempted to be charged in the petition ex parte, he was then in-capable of making an agreement for the appointment of a committee, and for the same reason he could not employ an attorney and authorize him to agree to the order.

See sections 2149, and 2155 Ky. Statutes. Section 2149 conferred jurisdiction on the circuit court on the filing by an interested party, a petition, averring that on account of infirmity or weight of age he had become so imbecile or insane as to render him incompetent to manage his estate, to try Joe Siddens on such charge. Taylor v. Moore, 112 Ky. 330, 65 S. W. 612, 23 Ky. Law Rep. 1572; Howard v. Howard, 87 Ky. 616, 9 S. W. 411, 10 Ky. Law Rep. 478, 1 L. R. A. 610; Stewart v. Tay-lor, 111 Ky. 247, 63 S. W. 783, 23 Ky. Law Rep. 577; Oster v. Meyer, 113 Ky. 181, 67 S. W. 851, 23 Ky. Law Rep. 2455.

Section 2151 provides:

"A committee shall not be appointed for * * * person charged to be imbecile or incompetent, who is a resident of this Commonwealth, unless he has been heretofore * * * found to be such by the judg-ment of the circuit or county court of the county of his residence upon the *inquest of a jury,* as pro-vided in this chapter. * * *" (Italics ours.)

Section 2155 reads:

"In all inquests held in respect of persons alleged to be imbecile or incompetent to manage their estates, the court shall * * * cause an oath to be administered to the jury in such form as to ascer-tain by the verdict whether such person, by reason of bodily infirmity, disabling him from making his thoughts and desires known, or by reason of any infirmity or weight of age, is incompetent to man-age his estate."

These sections are mandatory, and a strict conformity

therewith is indispensable to confer jurisdiction on the court. Tipton v. Tipton's Committee, 97 S. W. 413, 30 Ky. Law Rep. 80; In re Menifee v. Ends, 97 Ky. 388, 30 S. W. 881, 17 Ky. Law Rep. 280; Taylor v. Moore, 112 Ky. 330, 65 S. W. 612, 23 Ky. Law Rep. 1572; Hendricks v. Settle, 107 Ky. 344, 53 S. W. 1051, 21 Ky. Law Rep. 1058.

In such inquisitorial proceedings the instructions of the jury are properly within the language of the statute (Sabin v. Com., 233 Ky. 636, 26 S. W. [2d] 506), and it must appear by the verdict of a jury that the incompetency is due to mental unsoundness or imbecility and not to physical infirmity. Taylor v. Moore, supra.

The proceedings upon the motion of Mrs. Ol Downing, Jack Siddens, Ella Siddens, and Mildred Siddens in which Julia Siddens joined issue as to her right to a certain $1,000 county warrant and a certain $500 bond, were presented and tried without Joe Siddens being a party thereto, or any one representing him. Upon what theory a child, a grandchild, and wife of a living man may assert right and title to his property, and engage the one with, or against, the other, in litigation about their or the owner's title or right thereto, we are unable to conceive.

The appointment of Bradley without a verdict of a jury was void, and clothed him with no authority to assume the control of the estate and affairs of Joe Siddens, or to sue to collect his notes or to convert the proceeds into real estate. At the behest of the children of Joe Siddens, in an action to which neither they nor his wife were parties, not only has the personalty been converted into real estate, but encumbered by a lien to secure the debt, interest, and costs of Celsor, with the obligation on Joe Siddens or his estate, to pay Celsor's debt, interest, and costs. Even though Bradley was formally and legally appointed and qualified as committee, he was without authority so to encumber the real estate for the debt of another. Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44; Bowling v. Bank of New Haven, 219 Ky. 731, 294 S. W. 499. A person of unsound mind who is incompetent to take prudent care of himself and property is entitled to the protection and curation of the court (Shaw v. Dixon, 6 Bush, 644), but until he is at least declared by the verdict of the jury to come within this class, his children, grandchildren, and wife

may not litigate with each other about his estate, nor assume authority to enter into an agreement which virtually nullifies the law provided for his protection against their anxiety to administer his estate before his death. The order of court based upon their alleged agreement by and through their attorneys is no more valid than was the agreement itself.

For the reason indicated, the judgments in both cases are reversed, and the proceedings in the names of the daughter and her husband, and the grandson and his wife, will be dismissed at their cost, with an order restoring to Julia Siddens the evidences of the $1,000 county claim and the $500 bond, the judgment on the notes, and directing the Hudson land sold to satisfy them will be set aside, as well as all orders in the case, with cost against the committee as provided by subsec. 2, sec. 37, Civil Code of Practice, in so far as Joe and Julia Siddens are concerned with an order restoring to Joe Siddens the notes, canceled checks, and other effects and property which has been placed in the hands of the committee, from every source, and the possession of the land will be restored to the Hudsons. If any interest has been received on the $500 bond directed to be restored to Mrs. Siddens, it will be accounted for to her, and for proceedings consistent herewith.