## Combs v. Combs.

June 6, 1947.

Rehearing denied October 7, 1947.

Henry C. Stephens, Judge.

Bailey P. Wootton and D. G. Boleyn for appellant.

Combs & Combs for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—

Affirming.

The appeal is from a judgment setting aside two deeds on the ground of mental incapacity of the grantor. The issue grew up within a suit to partition land of Jeremiah Combs, deceased, which was instituted by Wood, John and Grant Combs, his sons, and McKinley Combs, a son of Grant, against Bentley, Kell and Alice Combs, his children, and Earl Combs, Alice's son. In stating the title and shares of the parties it was alleged in the petition that after Jeremiah's death Alice had conveyed to Earl an undivided half interest in her part of the real and personal property of the estate in fee, and the other half subject to a life estate, and that McKinley had purchased a one-half interest in all of it from Earl. Both deeds were executed at the same time, May 23, 1941. Alice also signed the deed to McKinley.

In an answer, counterclaim and cross petition filed by all the defendants except Earl, and with Bentley appearing as next friend of his sister, Alice, the allegations of title in her grantees were traversed. The next friend alleged that Alice had been feeble and unsound in mind since birth and mentally incompetent to contract and to have made the two deeds, which it was charged were obtained from her fraudulently and without consideration. A cancellation was prayed. The plaintiffs moved to strike the plea of the next friend on the ground that his interests were adverse and he had no right or authority to sue both for and against Alice at the same time. The motion was sustained in the judgment ordering a partition. It was therein provided that the interests of Alice, Earl and McKinley would be later adjudged as their respective interests might appear. A similar pleading was later filed in behalf of Alice in her own name by the attorneys for all the defendants, which, as we have shown, included the grantee, Earl Combs. Next in the record is a similar pleading of John Combs as Alice's next friend. Then follows a letter addressed to the circuit judge and purportedly signed by Alice, by mark, witnessed by the plaintiff, Grant Combs, and one of the attorneys for the plaintiffs, saying she did not desire to prosecute any case, and so far as she was concerned it could be dismissed settled. This letter was regarded by the court as a motion to dismiss the pleading filed in her own name and by her brother, John, as next friend, but it was not acted on. Then came a mo-

tion to dismiss and a special demurrer to John's pleading as next friend filed by McKinley, Bentley and Earl, and an intervenor, John M. Davidson. The switching of sides by Bentley, it developed, was because Alice had lately executed a contract authorizing him as her agent to sell her one-half interest in the timber on a tract alloted to her, McKinley and Earl as their interests might appear. McKinley and Bentley, as Alice's agent, sold an interest to Davidson, and Bentley seems to have acquired an interest personally. This was followed in time by an affidavit executed by Alice saying that she was capable of attending to her own business and had been imposed on by her brothers in attacking the deeds and disavowing John as her next friend.

The motion to strike the pleading of John as next friend was overruled. McKinley Combs then filed an amended and supplemental pleading in which he responded to the several adverse pleadings and claimed the deeds to be valid. John Combs as next friend moved that a jury be impaneled and an inquest be had into the mental competency of Alice. McKinley and Earl objected to this and pleaded want of jurisdiction in the Knott Circuit Court, since Alice was then and had been for four years a resident of Perry County. Finally, came an agreed order of all the parties made in open court withdrawing (1) plaintiff's motion to dismiss the petition of John as next friend; (2) Alice's motion to dismiss her adverse pleading; and (3) John's motion for an inquest.

This detailed recitation of the pleadings and orders seems necessary in considering some of the arguments on the appeal and as bearing on the issue of fact.

Much evidence was heard on the issue of Alice's capacity to make the deeds. The court found her to have been incompetent and cancelled her deeds to Earl and McKinley. This appeal is prosecuted by McKinley alone against Alice and John as her next friend and individually.

The appellant argues that this was a collateral attack upon the deeds and improperly maintained. The Civil Code of Practice requires that a petition for the partition of land shall name all parties having an interest in it and the amount of such interest, and permits

any party summoned in the action to contest, the rights claimed therein. Sec. 499. In accordance therewith the issue was raised as to the interest of the grantors and the grantees in these two deeds. We are concerned on the appeal only with McKinley's title. He was one of the plaintiffs asserting title to a share of the property. That was denied and an affirmative plea made by or in behalf of one from whom the claimed title had been acquired as to why it was invalid. It seems to us this is germane to the action. While the issue was collateral to the question of the rights of the other parties, it was direct as to the parties to the deed, and after a partition had been adjudged the issue was properly litigated in the suit. If it had not been done here, then the court would have been presented with a separate action involving the same issue.

The propriety of questioning title and setting up ownership by parties to a partition suit was recognized in Logan v. Catron, 43 S. W. 213, 19 Ky. Law Rep. 1200; Hunt v. Phillips, 105 S. W. 445, 32 Ky. Law Rep. 257; Risner v. Risner, 261 Ky. 359, 87 S. W. 2d 970.

We have a peculiar situation in which one of the plaintiffs, John Combs, filed a pleading as next friend of one of the defendants, Alice Combs, against a defendant, Earl Combs, and a plaintiff, McKinley Combs. John's first and principal appearance as plaintiff was for the purpose of obtaining his individual share of the land by partition. While not material from a legal standpoint, it may be said that John's interest was relatively small, being a one-sixth part of a one-seventh part which had belonged to a deceased sister, since he had already received a tract of land from his father. There was no issue as to the rights of any of the parties or their interest except that involved in Alice's conveyance. So as a matter of record and of fact, John had no adverse claim or antagonistic interest in respect to the matter in which this pleading as next friend of his sister, Alice, was filed. He was seeking to protect her rights. Be that as it may, the appellant, McKinley Combs, through his counsel, and by agreement, withdrew his objection to that cross action. Therefore, we need pursue that point no farther.

The judgment is also challenged upon the ground

that when it was made to appear that Alice may have been mentally incompetent, it was the duty of the court to have an inquest held and a committee appointed to represent her if found incompetent. As stated, the next friend made a motion to that effect, but it was withdrawn after the appellant, McKinley Combs, raised an objection on the ground of want of jurisdiction in the Knott Circuit Court. The point is made that it should have been ordered anyhow, presumably to be held in Perry County, where Alice was then living. We have two cases to the effect that a judgment cannot be overturned on this account where it is favorable to the alleged incompetent or persons seeking to reverse it.

In Howard v. Howard, 87 Ky. 616, 9 S. W. 411, 1 L. R. A. 610, Matt Howard sued as next friend of Elijah Howard to set aside his deed because of incompetency. Elijah filed an affidavit denying the allegations and challenging the right of the plaintiff to represent him. In this he confirmed his deed and asked that the suit be dismissed. The court set aside the conveyance. While an appeal by the grantee and Elijah was pending in this court, Elijah died and the case was revived in the name of his heirs. The same argument was made in that case as here. The question was given careful consideration in the opinion, which reviews the historical procedure in a case of this kind. We held that where the alleged incompetent person puts his competency in issue, the court should direct an inquiry into that fact, and if a jury should find him to be mentally incapable of transacting business, the court should appoint a committee and allow him to prosecute the suit in his name; or if found of sound mind to dismiss the case. However, Elijah's heirs asked that the judgment be affirmed since it was in their favor as his successors. This court reviewed the evidence and found the judgment to be correct on the merits and affirmed it.

Snowden v. Smith, 119 S. W. 785, is much like the Howard Case, and the one at bar. A brother as next friend of Asa Snowden sued to cancel his deed because of mental incapacity and fraud. Asa filed a motion like Elijah Howard's. The judgment upheld the deed. Asa, by his next friend, appealed. Pending the appeal Asa died. We held the trial court should have proceeded as was held in the Howard Case. Again, we

reviewed the evidence and found that while the grantor was weak in mind, the conveyance was beneficial to his best interests, and that it seemed the brother suing as next friend was acting quite selfishly; hence affirmed the judgment.

In the case at bar the alleged incompetent person is still living but is not a party to the appeal personally, as had been the alleged incompetents in the two foregoing cases. In withdrawing his objection to John's pleading as Alice's next friend, it could well be said that McKinley waived any right he might have now to insist upon his point. We think it well under the circumstances to examine the evidence on the merits.

Alice Combs was about sixty years old when these deeds were signed. She had been of feeble mind since early childhood. The whole picture shows her to be of low intelligence; one whose mentality is perhaps better than what is commonly called feeble-minded, being able to do simple and routine things; in a word, to be a moron. The sordid reputation as to the paternity of her illegitimate son, Earl, had better be omitted. There were expressions of opinion of laymen as to her poor mental condition, and many of them were supported by substantial probative facts. The family physician testified that she was not mentally capable of transacting any substantial business, which, of course, included conveying all of her interest in her father's estate, particularly to her nephew, McKinley Combs. Earl is likewise weak in mind, although not to the degree of his mother.

Alice's deposition was taken by one of the attorneys for McKinley Combs in the absence of attorneys for John Combs, her next friend. Concerning the deeds, she said she had made them to McKinley and Earl, and added: "I was letting Earl have it when I died, my place." When asked why, she answered:

"I made it for my youngun when I die. I want my youngun to have my place when I'm dead, and that's the reason I made it. I knowed if I didn't give it to him, he won't never have it. That's the reason. I want my youngun to have it."

This desire and purpose were repeated several times. During the course of her short deposition she stated that bringing the suit to cancel the deeds was

never "named to me," but three times said that she wanted the deed to Earl cancelled. This vacillation was reflected in the pleadings, as above outlined, and indicates that this unfortunate woman was like clay in the hands of a potter. Her alternate confirmation and rejection of her representation in the suit, and her variable attitudes seemingly were according to the wishes of whichever of her brothers or kinfolks she happened to be staying with or had control of her. Her eldest brother, John, was consistent throughout in his efforts to have the deeds cancelled and his concern was apparently unselfish.

The evidence on the other side, in addition to expressions of opinion of capacity, is, in the main, that she had joined in the execution of a gas lease and was able to receive and spend her rentals of about $15 every three months, and lend her small funds to her relatives, but the circumstances of the loans were not disclosed. She may have been imposed on. It is true that she went shopping at the country stores, and it is said was able to take care of herself in trading. All of this, however, is contradicted by testimony that she did not know one coin from another. This, in brief, summarizes the proof of capacity.

We are fully convinced that the judgment cancelling the deed to the appellant is sustained by the evidence. It proves such mental infirmity as affords a reasonable conclusion the grantor did not understand the consequence of joining with her son in the conveyance to her nephew of her property, or even that of her son, and that she was not capable of protecting her own interests. Thus the evidence meets the standard of incapacity often declared. Henson v. Jones, 247 Ky. 465, 57 S. W. 2d 498, 499. And McKinley Combs well knew this condition. Whatever may be the correct technical procedure with respect to ordering an inquest under conditions like those revealed in this record, it is apparent that the next friend and the chancellor have protected the interests of this feeble-minded woman in cancelling the deed to McKinley Combs, to which, as stated, the appeal only relates.

We are of opinion that the judgment should be affirmed. It is so ordered.